**Ken FITZGERALD, d/b/a Performance Orthopaedics, Appellant,**

v.

**ADVANCED SPINE FIXATION SYSTEMS, INC., Appellee.**

No. 98–0560.

Supreme Court of Texas.

Argued Nov. 17, 1998.

Decided July 1, 1999.

Rehearing Overruled Aug. 26, 1999.

Mark C. Walker, Steven L. Hughes, El Paso, for Appellant.

Matthew R. Muth, Houston, for Appellee.

Justice GONZALES delivered the opinion of the Court, joined by: Justice HECHT, Justice ENOCH, Justice ABBOTT, and Justice O'NEILL.

This case comes to us by certified question from the United States Court of Ap-

peals for the Fifth Circuit.[1] Section 82.002 of the Texas Civil Practice and Remedies Code gives an innocent seller the right to seek indemnity from the manufacturer of an allegedly defective product for products litigation costs, such as attorney fees.[2] Ken Fitzgerald seeks indemnity under the statute. Fitzgerald was dismissed from a products-liability suit because, while he sold the allegedly defective product, he did not sell the ones that purportedly injured the plaintiffs. Fitzgerald then sued the manufacturer to indemnify him for his litigation costs. The Fifth Circuit asks:

> Whether the Texas Products Liability Act of 1993, Tex. Civ. Pract. & Rem. Code Ann. § 82.002, requires a manufacturer of an injuring product to indemnify a retailer that was forced to defend itself in products liability litigation even though the retailer, who sold products of the same or similar type involved in the suit, did not sell the particular product claimed to have harmed the underlying plaintiff.[3]

We answer, "Yes."

The controlling facts are few and straightforward. Advanced Spine Fixation Systems manufactures a product called a spinal fixation device. Fitzgerald sold the device in three counties in Texas and New Mexico. Plaintiffs sued the manufacturer and a number of sellers of the device, including Fitzgerald, in multi-district litigation consolidated in the United States District Court for the Eastern District of Pennsylvania. The plaintiffs asserted various products liability theories as well as conspiracy, concert of action, and enterprise liability. The district court dismissed the claims against Fitzgerald because he did not sell the particular devices implanted in the plaintiffs.

Fitzgerald sought indemnity from Advanced Spine Fixation Systems under section 82.002(a) of the Texas Civil Practice & Remedies Code, for about $21,000 plus the fees and costs necessary to enforce his indemnity rights. The U.S. District Court in Texas granted a take-nothing summary judgment against Fitzgerald, and on appeal the Fifth Circuit certified the question.

■ The manufacturer argues that the Legislature intended to deny indemnification to sellers who are not in the chain of distribution from the manufacturer to the injured plaintiff. It contends that prior case law and legislative history demonstrate that the Legislature's purpose was to codify some aspects of our decisions and overrule others, resulting in indemnity only for those sellers in the chain of marketing or distribution of the defective product from the manufacturer to the injured plaintiff. We disagree. Case law does not directly address indemnification for sellers outside the chain of distribution, and we find nothing in the legislative history to cast doubt on the otherwise plain words of the statute.

■ When interpreting statutes we try to give effect to legislative intent.[4] "Legislative intent remains the polestar of statutory construction."[5] However, it is cardinal law in Texas that a court construes a statute, "first, by looking to the plain and common meaning of the statute's words."[6] If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms.[7] Further, if a

---

1. 143 F.3d 935.

2. See TEX. CIV. PRAC. & REM.CODE § 82.002(a), (b).

3. 143 F.3d at 936.

4. See Monsanto Co. v. Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939 (Tex.1993).

5. City of LaPorte v. Barfield, 898 S.W.2d 288, 292 (Tex.1995).

6. Liberty Mut. Ins. Co. v. Garrison Contractors, 966 S.W.2d 482, 484 (Tex.1998).

7. See Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 352 (Tex.1990); RepublicBank Dallas, N.A. v. Interkal, Inc., 691 S.W.2d 605, 607 (Tex.1985); Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex.1983); see also Fenet v. McCuistion, 105 Tex. 299, 147 S.W.

statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity. As our Court said long ago:

> When the purpose of a legislative enactment is obvious from the language of the law itself, there is nothing left to construction. In such case it is vain to ask the courts to attempt to liberate an invisible spirit, supposed to live concealed within the body of the law.[8]

The United States Supreme Court has also stated that a court should not apply rules of construction to unambiguous language barring exceptional circumstances.[9]

There are sound reasons we begin with the plain language of a statute before resorting to rules of construction. For one, it is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent. Also, ordinary citizens should be able to rely on the plain language of a statute to mean what it says.[10] Moreover, when we stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be.

■ Thus, our analysis begins with the Legislature's words. We may consider textual aids to construction for the insight they may shed on how the Legislature intended that their words be interpreted.[11] In doing so, we look at the entire act, and not a single section in isolation.[12] The 73rd Legislature enacted section 82.002 when it added chapter 82 to the Texas Civil Practice and Remedies Code.[13] In addition to indemnity, Chapter 82 addresses such disparate products liability issues as the standards for liability for inherently unsafe products, design defects, and firearms and ammunition.[14]

The critical provision is section 82.002(a):

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.[15]

Other subsections illuminate the duty created by section 82.002(a). A "loss" is not just liability for damages, but includes court costs and reasonable attorney fees.[16] The duty to indemnify does not require a judgment against a seller because it "applies without regard to the manner in which the action is concluded."[17] The duty is a new, distinct statutory duty, because it "is in addition to any duty to indemnify established by law, contract, or otherwise."[18] Finally, we may conclude that the duty is imposed only on "the manufacturer of a product claimed in a petition or complaint to be defective," because of the notice provision in subsection 82.002(f).[19]

867, 869 (1912)(holding that we adopt the construction that avoids absurd results).

8. *Dodson v. Bunton*, 81 Tex. 655, 17 S.W. 507, 508 (1891).

9. *See Burlington N. R.R. Co. v. Oklahoma Tax Commission*, 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987) (holding "Unless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete'," *quoting Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)).

10. *See Addison v. Holly Hill Fruit Prods., Inc.*, 322 U.S. 607, 618, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944).

11. *See Lee v. City of Houston*, 807 S.W.2d 290, 294–95 (Tex.1991).

12. *See Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex.1998).

13. Act of February 24, 1993, 73rd Leg., R.S., ch. 5,1993 Tex. Gen. Laws 4564.

14. *See* TEX. CIV. PRAC & REM.CODE §§ 82.002—82.006.

15. TEX. CIV. PRAC. & REM CODE § 82.002(a).

16. *See id.* § 82.002(b).

17. *Id.* § 82.002(e)(1).

18. *Id.* § 82.002(e)(2).

19. *Id.* § 82.002(f).

On its face, the statute requires a manufacturer, who allegedly produced the defective product, to indemnify certain sellers for reasonable products-liability litigation costs, except for those costs due to the sellers' own fault. Anyone who qualifies as a "seller" may seek indemnification, subject to the limitations of section 82.002(a). That is, anyone who "is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof" qualifies as a "seller."[20] This definition includes Fitzgerald, who sells spinal fixation devices, a product, for use by its customers. The statute does not explicitly require that the seller be proven to have been in the chain of distribution.

We think that to make such a requirement implicit in the statute conflicts with subsection (e)(1), which states in part: "The duty to indemnify under this section ... applies without regard to the manner in which the action is concluded."[21] An action may be concluded with a settlement, in which no underlying facts are admitted or established and the liability of a defendant seller or a defendant manufacturer is not determined. A seller of a manufacturer's product who is alleged to have sold the product to the plaintiff should not be denied indemnity if it proves that it is innocent but given indemnity if he settles without admitting or denying the fact.

The dissenting opinion contends that a literal reading of the statute would permit a seller to obtain indemnity from "every other manufacturer sued," not just the manufacturer whose product the seller sold. Our construction of the plain language of section 82.002(a) must avoid absurd results if the language will allow.[22] And when the terms of the statute are read in context, as we are required to do,[23] only manufacturers of a product alleged by a plaintiff to have been defective are subject to a claim of indemnity. Whether that manufacturer must also be in the seller's "chain of distribution" is not raised here because Fitzgerald has not sought indemnification from any other manufacturer.

■ In short, the statute unambiguously requires indemnification of certain sellers. It excludes certain sellers, but nothing in the statute suggests the exclusion the manufacturer urges. The manufacturer's interpretation would have us judicially amend the statute to add an exception not implicitly contained in the language of the statute. We may add words into a statutory provision only when necessary to give effect to clear legislative intent.[24] Only truly extraordinary circumstances showing unmistakable legislative intent should divert us from enforcing the statute as written. No such extraordinary circumstances are present in this case, as the rest of this opinion discusses.

The manufacturer argues that the common law did not permit an innocent seller to recover indemnity, that the Legislature sought to codify the common law with only a few explicit changes, and that the definition of "seller" does not explicitly alter the common law to include innocent sellers such as Fitzgerald. The manufacturer cites our opinion in *Duncan v. Cessna Aircraft Co.*[25] and a federal court opinion in *Jackson v. Freightliner Corp.*[26] But the question of whether a seller must be in the chain of distribution to claim indemnifica-

---

**20.** Tex. Civ. Prac. & Rem.Code § 82.001(3).

**21.** Tex. Civ. Prac. & Rem.Code § 82.002(e)(1).

**22.** *See C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 322 n. 5 (Tex.1994).

**23.** *See Liberty Mut. Ins. Co.,* 966 S.W.2d at 484.

**24.** *See Jones v. Liberty Mut. Ins. Co.,* 745 S.W.2d 901, 902 (Tex.1988); *see also Public*

*Util. Comm'n v. Cofer,* 754 S.W.2d 121, 124 (Tex.1988) ("A court may not write special exceptions into a statute so as to make it inapplicable under certain circumstances not mentioned in the statute.").

**25.** 665 S.W.2d 414, 432 (Tex.1984).

**26.** 938 F.2d 40 (5 th Cir.1991).

tion for product litigation costs was not at issue in these cases. In *Duncan,* we were primarily concerned with adopting a scheme of comparative causation in strict liability and merely pointed out as an aside that the new scheme would not affect the ability of a seller to recover indemnity.[27] The Fifth Circuit in *Jackson,* citing *Duncan,* stated that Texas common-law indemnity for products liability exists only when a member of the marketing chain is held purely vicariously liable, without independent culpability.[28] The court disallowed indemnity because of the independent culpability of the party seeking it.[29]

The *Duncan* dicta forms the only relevant common law support for the manufacturer's position. Similar propositions appear in *Firestone Steel Products Co. v. Barajas;*[30] *Gaulding v. Celotex Corp.;*[31] and *Armstrong Rubber Co. v. Urquidez.*[32] All state that a defendant must have distributed the product as a prerequisite to liability, but those cases all deal with a defendant's liability to the plaintiff, not with indemnity rights between co-defendants.[33] Likewise, a state court of appeals opinion cites *Duncan* for a similar proposition in *Central Consolidated, Inc. v. Robertshaw Controls Co.,*[34] but the issue there was whether a retailer could recover indemnification of attorney's fees after a jury found in favor of the retailer on the user's products liability action.[35]

To sum up, it appears that the exact issue has never been litigated in a reported decision. Thus, even assuming the Legislature intended to codify indemnity case law, the cases shed little light on the issue before us.

Even if the common law were clear on this issue, the manufacturer's claim that the Legislature intended to adopt the common law is not supported by the statute's legislative history and is contradicted by the statute itself. The Legislature must have been aware it was creating a new duty, not codifying existing law, because the statute says that the duty to indemnify under this section "is in addition to any duty to indemnify established by law, contract, or otherwise."[36] Thus, the state of the common law sheds little light on what the Legislature intended when it defined "seller" in section 82.001(3), and required manufacturers to indemnify sellers in section 82.002(a).

Nonetheless, the manufacturer uses its reading of prior case law to speculate on the goals the Legislature intended to accomplish. The manufacturer argues that in light of the common law, the Legislature must have meant to codify some but change other aspects of the common law. It is just as likely that the Legislature's purpose was to pass on the costs of products litigation from an innocent seller to the manufacturer, "without regard to the manner in which the action is concluded."[37] The Legislature's goal in crafting this statute cannot be known except as revealed in its text.

Viewed in context, section 82.002 is a part of a scheme to protect manufacturers as well as sellers of products. First, the new law ensured that the relatively small seller need not fear litigation involving problems that are really not in its control. Second, it established uniform rules of liability so that manufacturers could make

27. *See Duncan,* 665 S.W.2d at 432.

28. *See* 938 F.2d at 42.

29. *See id.* at 43.

30. 927 S.W.2d 608, 614 (Tex.1996).

31. 772 S.W.2d 66, 68 (Tex.1989).

32. 570 S.W.2d 374, 376 (Tex.1978).

33. *See Firestone Steel Prods. Co.,* 927 S.W.2d at 614; *Gaulding,* 772 S.W.2d at 68; *Armstrong Rubber Co.,* 570 S.W.2d at 376.

34. 868 S.W.2d 910 (Tex.App.—Beaumont 1994, writ denied).

35. *See id.*

36. Tex. Civ. Prac. & Rem.Code § 82.002(e)(2).

37. *Id.* § 82.002(e)(1).

informed business decisions and plaintiffs could understand their rights. The Legislature sought to protect both manufacturers and sellers, but gave preference to sellers with no independent liability. Indemnifying sellers such as Fitzgerald, who did not even sell the product in question, certainly achieves the Legislature's objective of protecting innocent sellers while still providing a remedy for plaintiffs injured by defective products.

The consequence of the manufacturer's interpretation would be that a seller who is strictly liable to the plaintiff may recover indemnity from the manufacturer, while a totally innocent seller with no liability to the plaintiff, but who was nonetheless brought into the suit as a seller of the manufacturer's products, may not recover indemnity from the manufacturer.

In conclusion, we decline to read a condition into section 82.002(a) that is inconsistent with its apparent purpose as revealed in its text and is not required to effectuate legislative intent. We therefore answer the Fifth Circuit's question, "Yes."

Justice OWEN dissented, joined by: Chief Justice PHILLIPS, Justice BAKER, and Justice HANKINSON.

Justice OWEN, joined by Chief Justice PHILLIPS, Justice BAKER and Justice HANKINSON, dissenting.

This Court, like the United States Supreme Court, has recognized a rule of statutory construction that is sensible and ensures that courts do not embellish or expansively interpret acts of the legislative branch. When a statute creates a liability unknown to the common law, the new liability will not be extended beyond the statute's plain meaning. The meaning of the statute before us does not plainly extend indemnity to a seller who was not in the marketing chain, despite the Court's repeated assertions to the contrary. Indeed, the statute indicates that the common-law requirement that the seller must have sold the offending product to the third party survives.

The Court's opinion is also short on consistency. It insists that the open-ended definition of "seller" under the statute can only be read broadly, but when it comes to the statute's parallel and equally open-ended definition of "manufacturer," the Court refuses to construe it in the same manner.

In the final analysis, the Court substitutes what it thinks the statute should accomplish for what the statute actually says. Accordingly, I cannot join the Court's opinion, and I respectfully dissent.

I

Although the common-law rule requiring strict construction of statutes in derogation of the common law does not apply to Texas statutes, *see* TEX. GOV'T CODE § 312.006(b), we said in *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex.1993), that if a statute creates a liability unknown to the common law, it will be "strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *See also Shaw v. Railroad Co.*, 101 U.S. 557, 565, 25 L.Ed. 892 (1879) ("No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express.").

Sections 82.001 and 82.002 are not models of clarity. The definitions of "seller" and "manufacturer" are open-ended. Accordingly, this Court should consider the state of the law before the enactment of sections 82.001 and 82.002 to determine if these sections would create a new liability for indemnity if they were construed in the manner urged by Fitzgerald.

When the prior law is examined, four things become clear. First, Texas law allowed indemnity only for a party whose liability was purely vicarious. *See B & B Auto Supply, Sand Pit, & Trucking Co. v. Central Freight Lines, Inc.*, 603 S.W.2d 814, 817 (Tex.1980) (explaining that "the common law right of indemnity is no longer available between joint tortfeasors in

negligence cases"). Second, if the party seeking indemnity was independently culpable, there was no right to indemnity. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 432 (Tex.1984). Third, there was no common-law indemnity for an innocent seller who was not in the chain of distribution and thus was not liable to the third party. *See id.* And finally, this Court strongly implied—if not held—that common-law indemnity did not include the right to recover attorney's fees or defense costs. *See Aviation Office of Am., Inc. v. Alexander & Alexander, Inc.,* 751 S.W.2d 179, 180 (Tex.1988). In view of the Court's conclusion in this case that Texas decisions did not directly address indemnification of sellers outside the chain of distribution, that aspect of common-law indemnity warrants further analysis.

Common-law indemnity is based on the concept that the party seeking indemnity was liable or was exposed to liability to a third party and had actually paid damages or settlement dollars to that third party. We said in *Humana Hospital Corp. v. American Medical Systems, Inc.,* 785 S.W.2d 144 (Tex.1990), that "[g]enerally speaking, a person who, without personal fault, has become subject to tort liability for the unauthorized and *wrongful* conduct of another, is entitled to full indemnity from the other for expenditures properly made to discharge the liability." *Id.* at 145 (citing LEE, MODERN TORT LAW § 20.02 (1989)).

In accord with this basic premise of common-law indemnity, we observed in *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816 (Tex.1984), that an innocent retailer *in the chain of distribution* could seek indemnity from the manufacturer in a products liability case. *See id.* at 819. We further explained in *Duncan v. Cessna Aircraft Co.,* that the adoption of comparative causation did not affect the common-law right of an innocent seller *in the marketing chain* to indemnity:

> Comparative causation does not affect the right of a retailer or other member of the marketing chain to receive indemnity from the manufacturer of the defective product when the retailer or other member of the marketing chain is merely a conduit for the defective product and is not independently culpable.

665 S.W.2d at 432.

Although the question of whether an innocent seller who did not sell the offending product to the plaintiff could seek indemnity was not at issue in *Bonniwell* or *Duncan,* our references to the chains of distribution and marketing in those decisions were not simply oversights or accidents. The common law of indemnity always recognized as a first principle that the indemnitee had to have a relationship with the underlying third party. *See* RESTATEMENT OF RESTITUTION § 76 cmt. b (1937) (stating that the general rule of indemnity "applies where two or more persons *are subject to a duty* to a third person either as joint promisors or otherwise, under such circumstances that one or more of them, as between themselves, should perform it rather than the other" (emphasis added)); RESTATEMENT (SECOND) OF TORTS § 886B(1) (1979) (stating that indemnification is available "if two persons are liable in tort to a third person"). Within the context of products liability, the necessary relationship arises from the fact that the seller was in the chain of distribution from the manufacturer to the consumer. If the seller was not in the chain, then the seller would have no duty or relationship to the consumer.

The corollary to the requirement that the seller must have had some liability or potential liability when it paid damages or settlement dollars was the concept that the manufacturer was not required to indemnify the seller for those payments unless it was proven that the manufacturer was liable to the plaintiff or the manufacturer admitted that it was liable to the plaintiff. *See Humana,* 785 S.W.2d at 145 (holding that no right to indemnity could be asserted until there was a judicial determination or admission that the one from whom indemnity was sought was or could have been liable for the underlying injury);

*Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 446 (Tex.1989) (holding that "[t]here is no right of indemnity against a defendant who is not liable to the plaintiff") (citing *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 553 (Tex.1981); *Brown & Root, Inc. v. Rust Eng'g,* 679 S.W.2d 576, 578 (Tex.App.—Texarkana 1984, writ ref'd n.r.e.)). The fact that there was a relationship between the would-be indemnitee and the would-be indemnitor was insufficient to give rise to indemnity even if that relationship, such as seller and manufacturer, was the basis of the third party's suit.

Thus, to summarize, if someone were seeking indemnity under the common law, as distinguished from indemnity based on the terms of a contract, the common law required that the indemnitee must be liable or have considerable exposure to liability to the third party. And the common law never recognized a right of indemnification for costs associated with defending claims made against a party who could not be liable to the plaintiff. Indeed, the common law did not recognize a right to indemnification for defense costs even when there was a right to full indemnity for all amounts paid to a third party. *See Alexander,* 751 S.W.2d at 180. The law left it to parties who had a relationship with one another to provide contractually for indemnification for defense costs, to obtain insurance for the cost of defending nonmeritorious claims, or to bear their own costs of defending nonmeritorious claims.

As interpreted by the Court, section 82.002 is a significant departure from the common law. Thus, the question is whether the statute plainly and fairly expresses such an intention. That is the question to which I now turn.

## II

The Products Liability Act provides that a manufacturer shall indemnify a seller as follows:

A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable. TEX. CIV. PRAC. & REM.CODE § 82.002(a). The Act defines "seller" as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." *Id.* § 82.001(3).

The imprecise definition of "seller" under the Act does not constitute a sufficient statement from the Legislature that it intended to remove the common-law chain-of-distribution requirement. To the contrary, there is a strong indication in the definition of "seller" and in section 82.002 that the Legislature intended for a seller seeking indemnity to have actually sold the defective product that caused the underlying injury.

First, the Legislature chose to use the words "in the stream of commerce" in explaining which sellers would be entitled to indemnity. *Id.* It seems apparent that the Legislature intended that the stream of commerce actually bring the seller's product to the plaintiff before a seller would be entitled to indemnity.

Second, the Act provides in subsection 82.002(a) that a seller is entitled to indemnity "except for any loss caused by *the seller's* negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering *the product,* for which *the seller* is independently liable." *Id.* § 82.002(a) (emphasis added). "[T]he product" unmistakably refers to the product that caused the injury that gave rise to a products liability action. Likewise, "the seller[ ] ... modifying ... the product" can refer only to the seller who placed that particular defective product in the stream of commerce. And, the final reference to "the seller" also clearly refers to the seller who sold the offending product and who would be "independently liable" for its actions. It seems more probable than not that when the Legislature said that a man-

ufacturer shall indemnify "a seller against loss arising out of a products liability action," it meant that the actual seller of the product was entitled to indemnity, just as it meant "the seller" of the product when setting forth the exceptions to the statutory grant of indemnity. *See id.*

Nevertheless, the Court interprets the statute expansively, at least as to sellers. As long as the seller places "a product" in the "stream of commerce," *id.* § 82.001(3), the Court says that the seller is entitled to indemnity even though the "stream of commerce" did not take the seller's product to the plaintiff. *See* 996 S.W.2d at 871.

But if sections 82.001 and 82.002 are interpreted in this manner, then the definition of "manufacturer" must be interpreted consistently with that approach. The Court says that because there is no mention of "chain of distribution" or words of similar import in the definition of seller or in subsection 82.002(a), a seller who seeks indemnity is not required to be in the chain of distribution. *See* 996 S.W.2d at 871. If that is so, then the Act's silence with regard to a chain of distribution between a manufacturer and a seller seeking indemnity means that a manufacturer may be required to indemnify a seller who was not in its chain of distribution. If there is no requirement of a marketing chain between the seller and the manufacturer, then Fitzgerald could recover its defense costs not only from Advanced Spine but also from every other manufacturer sued in the multi-district litigation, even if Fitzgerald never sold any products made by those defendants. The hypertechnical approach adopted by the Court in construing which sellers are indemnified inevitably leads to a dramatic change in the law of indemnity.

In implicit recognition that its reasoning leads to results that the Legislature never contemplated, the Court balks at carrying its approach to statutory interpretation to its logical conclusion. The Court dodges the issue, saying that "[w]hether th[e] manufacturer must also be in the seller's 'chain of distribution' is not raised here because Fitzgerald has not sought indemnification from any other manufacturer." 996 S.W.2d at 871.

The Court has engaged in its own determination of who should and should not be entitled to indemnity and from whom indemnity should and should not be permitted. The Court has not discharged its proper function, which is to construe the statute in a manner that does not create new liability in derogation of the common law unless the statute evinces the Legislature's clear intent to do so. *See Smith v. Sewell,* 858 S.W.2d 350, 354 (Tex.1993). The fact that the Court is deciding what the law of indemnity *should be* is exposed when it says: "A seller of a manufacturer's product who is alleged to have sold the product to the plaintiff *should not be denied indemnity* if it proves that it is innocent but given indemnity if he settles without admitting or denying the fact." 996 S.W.2d at 871 (emphasis added). The Court thus believes that it is fundamentally unfair to deny indemnity to a seller who had no contact with the plaintiff but to indemnify a seller who actually sold the product that injured the plaintiff. What is fair or unfair in this context is not our call. Our task today is to determine what call the Legislature has made. If this Court had been asked in a products liability case to change the common law and to allow a seller such as Fitzgerald to have indemnity, then the Court may have done so. But we cannot now substitute our judgment for that of the Legislature in construing what the Legislature has enacted.

The approach taken by the Court in determining who is entitled to indemnity misses the mark because the statute does not clearly say that a seller does not have to be in the chain of distribution or whether there must be a chain of distribution between the seller and the manufacturer from which it seeks indemnity. Unless and until the Legislature unmistakably speaks to these issues, the prudent course is for this Court to expand indemnity only to the limits clearly laid out by the Legislature and not beyond those limits.

## III

The only other reason the Court gives for its expansive interpretation of "seller" under sections 82.001 and 82.002 is also untenable. The Court says that if those sections were construed to require that a seller must have sold a product that injured the third party, they would conflict with subsection 82.002(e)(1). *See* 996 S.W.2d at 871.

Subsection 82.002(e)(1) says that a manufacturer's duty to indemnify under section 82.002 "applies without regard to the manner in which the action is concluded." TEX. CIV. PRAC. & REM.CODE § 82.002(e)(1). The Court reasons: "An action may be concluded with a settlement, in which no underlying facts are admitted or established and the liability of a defendant seller or a defendant manufacturer is not determined." 996 S.W.2d at 871. How that fact creates a conflict the Court does not explain, other than to offer its own opinion that a seller who is innocent "should not be denied indemnity." 996 S.W.2d at 871.

Subsection 82.002(e)(1) does not speak at all to the question of whether a seller must have actually sold the product that is the basis of the third party's claim before the seller is entitled to indemnity. Instead, subsection 82.002(e)(1) removes the common-law requirement that there be either a judicial determination or an admission of liability by the manufacturer before the manufacturer is required to indemnify a seller. *See Humana*, 785 S.W.2d at 145. Before the enactment of subsection 82.002(e)(1), a seller was required to show that it sold the product to the underlying plaintiff, that the manufacturer was found liable or admitted liability to the plaintiff, and that the seller had to pay damages. Under the statute, a seller no longer has to prove that the manufacturer was found liable or admitted liability. Thus, if both the seller and the manufacturer are exonerated in a suit by the third party, the seller is entitled to indemnity if it sold and the manufacturer supplied the product at issue. Assuming that a case were settled before there was a determination of liability, the seller would still have to prove in a subsequent indemnity action that it sold and the manufacturer supplied the product at issue. Subsection 82.002(e)(1) does not dispense with the common-law requirement that the seller must have some relationship or potential basis of liability to the third party.

## IV

I agree with the Court that the Legislature did intend to change the common law of indemnity when it enacted section 82.002 and that the Legislature created rights that did not exist at common law. Those include (1) the right to indemnity from a manufacturer without showing that the manufacturer would have been liable to the underlying plaintiff, and (2) the right to recover attorney's fees and other costs of litigation. But when it created these new rights, the Legislature did so directly and unmistakably. The Legislature has not unmistakably dispensed with the common-law requirement that a seller must have some connection to the third party before it is entitled to indemnity from a manufacturer. Indeed, the statute itself indicates that such a requirement remains. I would answer the certified question "no."