

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

July 9, 2003

The Honorable Eugene D. Taylor
Williamson County Attorney
Williamson County Courthouse Annex
Second Floor
405 Martin Luther King, Box 3
Georgetown, Texas 78626

Opinion No. GA-0086

Re: Whether the Hutto Economic Development Corporation may pay for construction of a hippopotamus statue as a promotional purpose (RQ-0038-GA)

Dear Mr. Taylor:

You ask about the Hutto Economic Development Corporation's authority to pay for construction of a hippopotamus statue as a promotional purpose.[1]

## I.  Background

You inform us that the Hutto Economic Development Corporation ("HEDC") is a development corporation created under section 4A of the Development Corporation Act (the "Act"),[2] which authorizes cities of a certain size to create a development corporation and to levy a sales and use tax for the benefit of the corporation if the voters approve the tax. See TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(a), (d) (Vernon Supp. 2003). As a general matter, a section 4A development corporation must use these tax revenues "for the promotion and development of new and expanded business enterprises." Id. Authorized uses include economic development projects (such as land, equipment, facilities and infrastructure), project costs, and job training. See id. §§ 2(4), (11)(A) (defining "cost" and "project"), 4A(f) (job training), 4A(i) (limits on section 4A projects), 38 (job training requirements). In addition, a section 4A development corporation may spend a limited amount of its revenues for "promotional purposes." Id. § 4A(b)(1).

The City of Hutto created the HEDC under section 4A. Now, the two entities dispute whether the HEDC may spend its revenues to help finance a proposed hippopotamus statue. You explain that the City and the Hutto Independent School District have adopted the hippo as the local

---

[1]Letter from Honorable Eugene D. Taylor, Williamson County Attorney, to Honorable Greg Abbott, Texas Attorney General (Mar. 26, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

[2]Letter Brief attached to Request Letter from Honorable Eugene D. Taylor, Williamson County Attorney, to Honorable John Cornyn, Texas Attorney General, at 1 (Nov. 13, 2002) (on file with Opinion Committee) [hereinafter Taylor Brief].

mascot. *See* Taylor Brief, *supra* note 2, at 1. The HEDC board of directors "voted twice to participate in a project to construct a large fiberglass Hippo statue that will be placed in the City in a highly visible location." *Id.* at 2. After members of the Hutto City Council objected, the board rescinded its action. *See id.*

II.    HEDC's Authority to Pay for Statue's Construction

In light of this situation, you ask first, "Does the HEDC Board have authority to participate in and pay a portion of the Hippo statue construction cost under Section 4A(b)(1) of the Act allowing 10 percent of the Corporate income to be used for that promotional purpose?" *Id.* at 3.[3]

Section 4A(b)(1) provides that a development corporation "created under this section may spend no more than 10 percent of the corporate revenues for promotional purposes." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(b)(1) (Vernon Supp. 2003). In essence, you ask whether "a large fiberglass Hippo statue" would serve a promotional purpose of the HEDC within the meaning of section 4A(b)(1). *See* Taylor Brief, *supra* note 2, at 2-3. The Act does not define "promotional purposes," but "promotion" commonly means "helping forward" or, more specifically, furthering the sale of something by "advertisement or . . . publicity," and the word "promotional" "relat[es] to advertising." XII OXFORD ENGLISH DICTIONARY 618-19 (2d ed. 1989) (definitions of "promotion" and "promotional"); *see also* TEX. GOV'T CODE ANN. §§ 312.001 (Vernon 1998) ("This subchapter [entitled "Construction Rules for Civil Statutes"] applies to the construction of all civil statutes."), 312.002(a) ("words shall be given their ordinary meaning"). In addition, the Act generally requires a section 4A development corporation to use sales tax revenues "for the *promotion* and development of *new and expanded business enterprises*." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(m) (Vernon Supp. 2003) (emphasis added). Thus, a promotional expenditure under section 4A(b)(1) must advertise or publicize the city for the purpose of developing new and expanded business enterprises.

As this office has noted in the past, the determination whether a particular expenditure serves a promotional purpose is a question of fact that this office cannot resolve. *See* Tex. Att'y Gen. LO-94-037, at 3 ("whether any particular expenditure purportedly for 'promotional purposes' is indeed for 'promotional purposes' and is otherwise consistent with the provisions of the act and applicable state law would depend on the precise factual nature of the particular expenditure").[4] For example,

---

[3]In addressing your questions, we assume that there are no limitations on the expenditure of the section 4A tax proceeds particular to the HEDC. The authority of a particular development corporation may be limited by the resolution creating the corporation or ballot language restricting the use of the section 4A tax. *See, e.g.*, TEX. REV. CIV. STAT. ANN. art. 5190.6, §§ 4(a) (Vernon Supp. 2003) (resolution creating corporation must specify its purpose); 4A(n) (election on imposition of tax may limit time tax is imposed); 4A(r) (election on imposition of tax may limit use of tax proceeds to specific projects). It may also be limited by financing documents relating to the corporation's bonds. *See, e.g., id.* §§ 4A(f) (tax proceeds may be pledged to bond debt service); 25(e) (pledge or agreement to secure bonds in effect until bonds are fully paid).

[4]The same is true with respect to economic development projects. *See* Tex. Att'y Gen. Op. No. JC-0362 (2001) at 5 ("the determination of whether a particular project will promote the economic development purposes of the Act is,

(continued...)

you inform us that the Mayor takes the position that the proposed statue would "promote and advertise the City to potential businesses and industries and create an interest in the City for businesses and industries to locate there" and that "the advertisement value of the Hippo will be immense." Taylor Brief, *supra* note 2, at 2. Whether the proposed statue would serve a promotional purpose is a question of fact for the HEDC board of directors to resolve in the first instance, subject to judicial review, and, as we discuss below, the Hutto City Council's supervisory authority.

## III.    City Council's Authority with Respect to HEDC Promotional Expenditures

You next ask, "Does the HEDC require specific Hutto City Council approval of the Hippo project as a promotional activity under Section 23(a)(12)[5] of the Act, or is the HEDC authorized to undertake promotional activities without City Council approval?" *Id.* at 3 (footnote added).

Section 4A(b)(1), which authorizes a section 4A development corporation to "spend no more than 10 percent of the corporate revenues for promotional purposes," also provides in pertinent part that

> [a] city may create a corporation under this Act governed by this section. *The corporation has the powers and is subject to the limitations of a corporation created under other provisions of this Act. To the extent of a conflict between this section and another provision of this Act, this section prevails.* The articles of incorporation of a corporation under this section must state that the corporation is governed by this section.

TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(b)(1) (Vernon Supp. 2003) (emphasis added).

As a general matter, under section 4A, the governing body of the city that created the development corporation appoints the directors to its board, and they "serve at the pleasure of the governing body." *Id.* § 4A(c). In addition, other more general provisions of the Act expressly

---

[4](...continued)
in general, a question of fact within the discretion of the board of directors of the development corporation in the first instance"); Tex. Att'y Gen. LO-95-072, at 3 (determination whether section 4B development corporation may construct sanitary sewer lines in existing residential subdivision must be made by board of directors in first instance subject to review for abuse of discretion), LO-92-086, at 2 (concluding that it was within discretion of section 4A development corporation in first instance to characterize use of sales tax proceeds to finance bonds for Texas State Technical College System Extension Center as promotion of commercial or economic development given statute governing such centers). *But see* Tex. Att'y Gen. LO-97-061, at 5 (concluding that based on information provided, board of directors had no basis for determining that expenditure of sales tax proceeds to support Clarendon College would promote economic development).

[5]In the process of amending article 5190.6, § 23(a), the Seventy-eighth Legislature renumbered section 23(a)(12) as section 23(a)(13). *See* Act of May 27, 2003, 78th Leg., R.S., H.B. 3075, § 2 (effective June 20, 2003).

contemplate that the "unit"[6] that created the development corporation will continue to exercise control over it. *See generally Gaut v. Amarillo Econ. Dev. Corp.*, 921 S.W.2d 884, 887 (Tex. App.–Austin 1996, no writ) (per curiam) (stating that development corporation's "broad powers" are subject to creating unit's control); HOUSE COMM. ON WAYS & MEANS, BILL ANALYSIS, Tex. S.B. 971, 71st Leg., R.S. (1989) at 2 (stating that section 4A development corporation would be within city council's "total control"); *see also* Tex. Atty' Gen. Op. No. JC-0553 (2002) at 4 ("A creating unit retains control and responsibility over the corporation.").

In particular, section 23 of the Act, which enumerates development corporations' general powers, provides that although a development corporation may "make and alter bylaws," its bylaws may not be "inconsistent with its articles of incorporation or with the laws of this state" and must have "the approval of the unit under whose auspices the corporation was created by resolution of the governing body for the administration and regulation of the affairs of the corporation."[7] In addition, section 23 grants a development corporation "all powers necessary or appropriate to effect any or all of the purposes for which the corporation is organized," but that grant of authority is expressly made subject "at all times to the control of the governing body of the unit under whose auspices the corporation was created."[8] Finally, section 21 of the Act provides that the creating unit "*will approve all programs and expenditures of the corporation* and annually review any financial statements of the corporation, and at all times the unit will have access to the books and records of the corporation." TEX. REV. CIV. STAT. ANN. art. 5190.6 § 21 (Vernon Supp. 2003) (emphasis added).

In answer to your question, section 4A(b)(1) authorizes the HEDC board of directors to "spend no more than 10 percent of the corporate revenues for promotional purposes." *Id.* § 4A(b)(1). But section 4A(b)(1) also expressly provides that a section 4A corporation "is subject to the limitations of a corporation created under other provisions of this Act," such as the general limitations in sections 21 and 23. *See id.* Sections 21 and 23 expressly authorize the Hutto City Council, the creating unit, to disapprove an HEDC expenditure for the "Hippo project." *See id.* § 21 (creating unit "will approve all programs and expenditures of the corporation"); Act of May 27, 2003, 78th Leg., R.S., H.B. 3075, § 2, sec. 23(a)(13) (effective June 20, 2003) (corporation's authority subject "at all times to the control of the governing body of the unit under whose auspices the corporation was created"). We disagree with the contention that "the specific provision granting authority to spend 10 percent of revenues on promotional activities is not limited by the non-specific powers in Section 23(a)(12)[9] requiring City Council approval." Taylor Brief, *supra* note 2, at 3-4 (footnote added). Although section 4A prevails over another conflicting provision of the Act, *see*

---

[6]*See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 2(13) (Vernon Supp. 2003) (defining "unit" to mean "a city, county or district which may create and utilize a corporation").

[7]Act of May 27, 2003, 78th Leg., R.S., H.B. 3075, § 2 (effective June 20, 2003) (amending TEX. REV. CIV. STAT. ANN. art. 5190.6, § 23(a) and renumbering subsection (10) as subsection (11)).

[8]*Id.* (amending TEX. REV. CIV. STAT. ANN. art. 5190.6, § 23(a) and renumbering subsection (12) as subsection (13)).

[9]*See supra* note 5.

TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(b)(1), section 4A(b)(1) does not provide that a city's governing body is prohibited from reviewing expenditures for promotional purposes nor does any other provision in section 4A.

Moreover, because the HEDC's bylaws may not conflict with state law,[10] it is immaterial that the HEDC's bylaws do not "restrict the Board from promotional activities without City Council approval." Taylor Brief, *supra* note 2, at 3. The Act plainly authorizes the Hutto City Council to review and disapprove such an expenditure even if the HEDC bylaws do not require Council approval.

IV.    Ten Percent Cap

Finally, you ask, "Does the 10 percent limitation on promotional activities apply to annual revenues or 10 percent of all revenues collected by the HEDC?" *Id.* You assert that section 4A(b)(1) "does not limit the 10 percent cap to anything other than revenues. The limitation is cumulative of all revenues paid to the Corporation and does not impose the 10 percent limit to revenues paid only during a specific time period." *Id.* at 4. In other words, you believe that a development corporation that has not expended revenues for promotional purposes in past years may spend more than ten percent of its current annual revenues for promotional purposes.

In construing a civil statute, we try to determine and give effect to the legislature's intent, *see* TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998) ("In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy."), which we must derive, if possible, from the "'plain and common meaning of the statute's words,'" *State ex rel. State Dept. of Highways and Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999)). "Moreover, the legislative intent should be determined from the entire act, and not simply from isolated portions." *Id.* (citing *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998)). Because section 4A(b)(1) is silent with respect to the time frame for the promotional-expenditure cap, *see* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(b)(1) (Vernon Supp. 2003) (a development corporation "created under this section may spend no more than 10 percent of the corporate revenues for promotional purposes"), we consider your question in light of the Act as a whole.

It is plain from the Act as a whole that the legislature intends development corporations to account for their expenditures on a yearly basis. Section 4C of the Act requires 4A and 4B development corporations to submit annual reports to the comptroller detailing their total revenues and expenditures for the preceding fiscal year. *See id.* § 4C(a)-(b). A report must include, among other things, a statement of the corporation's total expenditures for marketing and promotion. *See id.* § 4C(b)(4)(C). In addition, section 21 of the Act requires a creating unit to annually review the corporation's financial statements. *See id.* § 21 (the creating unit "will . . . annually review any financial statements of the corporation"). As a general matter, nonprofit corporations must account for their financial activity on a yearly basis. *See id.* art. 1396-2.23A(B) (Vernon 2003) (Texas Non-

---

[10]*See supra* note 7.

Profit Corporation Act) ("[T]he board of directors shall annually prepare or approve a report of the financial activity of the corporation for the preceding year. The report must conform to accounting standards as promulgated by the American Institute of Certified Public Accountants and must include a statement of support, revenue, and expenses and changes in fund balances, a statement of functional expenses, and balance sheets for all funds.").

We also consider your question in light of the ten percent cap's legislative purpose, *see* TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998), which is to limit a development corporation's expenditures for promotional purposes, thereby ensuring that the corporation spends the majority of its revenues on economic development projects and other authorized purposes. Voters may approve the imposition of a section 4A sales and use tax for an unlimited time period. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(m), (n) (Vernon Supp. 2003). If section 4A(b)(1) were construed to permit a development corporation to base the amount of a promotional expenditure on its revenues since creation rather than its revenues for a limited period, a development corporation that had spent very little for promotional purposes in the past could spend the majority of its current revenues for a promotional purpose. Such an expenditure would be contrary to the cap's purpose.

In light of the Act as a whole and the cap's purpose, we construe the section 4A(b)(1) provision limiting a development corporation to "spend[ing] no more than 10 percent of the corporate revenues for promotional purposes" as a limit on the use of annual revenues. As a result, we conclude that a section 4A development corporation may not spend more than ten percent of its current annual revenues for promotional purposes in any given year. A corporation that chooses to spend revenues for promotional purposes may spend up to ten percent of its annual revenues for that purpose or may set all or some of those funds aside in a promotional purposes account. A corporation that set aside revenues in such an account could spend on promotional purposes those past-year revenues along with ten percent of its current annual revenues without violating the cap. If a corporation has not set aside such moneys in past years, however, it is limited to spending no more than ten percent of its current annual revenues on promotional purposes. Nor may a corporation spend more than ten percent of its current annual revenues in a given year in anticipation that it would spend less than ten percent of its annual revenues on promotional purposes in future years.

Thus, the HEDC may not spend more than ten percent of its current annual revenues for promotional purposes in any given year. In addition, unexpended revenues specifically set aside for promotional purposes in past years may be expended for that purpose.

## S U M M A R Y

Whether a hippopotamus statue would serve a Hutto Economic Development Corporation ("HEDC") promotional purpose is a question of fact for the HEDC board of directors to resolve in the first instance, subject to judicial review and the supervisory authority of the Hutto City Council. The City Council may disapprove an HEDC expenditure for the statue. The HEDC may not spend more than ten percent of its current annual revenues for promotional purposes in any given year. In addition, unexpended revenues specifically set aside for promotional purposes in past years may be expended for such purposes.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee