

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

August 2, 2006

The Honorable Beverly Woolley
Chair, Committee on Calendars
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

The Honorable John Smithee
Chair, Committee on Insurance
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Shirley J. Neeley, Ed.D
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0446

Re: Conflict of interest disclosure requirements for local government officers and persons who contract with local governmental entities (RQ-0451-GA)

Dear Representatives Woolley and Smithee and Commissioner Neeley:

The three of you write to ask numerous questions about chapter 176, Texas Local Government Code. Representatives Woolley and Smithee[1] ask:

1. What is the appropriate definition of the term "business relationship," a term used in Chapter 176 to trigger disclosure requirements for local government officers? Does this term include personal or business interest bearing savings accounts which generate taxable interest for the local government officer or a family member?

2. What are the appropriate definitions of "affiliation" and "business relationships," terms used in Chapter 176 to trigger disclosure requirements for

---

[1]Letter from Honorable Beverly Woolley, Chair, Committee on Calendars, Texas House of Representatives and Honorable John Smithee, Chair, Committee on Insurance, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas (Feb. 13, 2006) (on file with the Opinion Committee, *also available at* http://www.oag .state.tx.us) [hereinafter Woolley Request Letter].

persons who contract or seek to contract with local governmental entities? Do these terms include personal or business loans which generate taxable interest for certain vendors, such as financial institutions?

3.  What does the phrase "any other affiliation or business relationship that might cause a conflict of interest," a phrase used in Chapter 176 to trigger disclosure requirements for persons who contract or seek to contract with local governmental entities, encompass?

4.  Whether Chapter 176 applies to professional services providers.

5.  How long should a local governmental entity retain the conflicts disclosure statements and conflicts of interest questionnaires under Chapter 176? How long should such documents remain available on a local governmental entity's website?

6.  Whether the disclosure requirements of Chapter 176, as applicable to a partnership or corporation which seeks to contract or contracts with a local governmental entity, apply solely to the partnership or corporation as a whole, or whether the disclosure requirements apply to some or all of the individual partners and/or employees of the entity contracting or seeking to contract with a local governmental entity who may be working on a contract.

7.  Would a person seeking to contract with a local governmental entity comply with the requirements of Chapter 176 if the person discloses affiliations and business relationships with all business entities disclosed by the local governmental entity to the person as having a triggering relationship with a local government officer and discloses affiliations and business relationships with all employees and outside contractors disclosed by the local governmental entity to the person as making recommendations concerning the proposed contract, even if that disclosure proves to be incomplete or the local governmental entity fails to make any such disclosure despite the person's request, absent actual knowledge of the person to the contrary?

8.  What does the phrase "contracts or seeks to contract for the sale or purchase of property, goods or services with a local governmental entity," a phrase triggering disclosure requirements under Chapter 176, encompass? Does Chapter 176 apply to small or routine purchases?

9.  Whether local governmental entities have a responsibility to require persons who contract or seek to contract with local governmental entities to comply with Chapter 176 prior to entering into a contract with the local governmental entity[.] Would the failure of a contractor to comply with the requirements of

Chapter 176 have any impact on the validity of a contract between the local governmental entity and the contractor?

10. Whether Chapter 176 requires a person who contracts or seeks to contract with a local governmental entity to file a disclosure questionnaire if the person has no business or financial relationships or affiliations to disclose.

Woolley Request Letter, *supra* note 1, at 2–3 (footnotes omitted). On behalf of school districts, Commissioner Neeley[2] asks:

1. Are existing vendors (prior to the January 1, 2006 effective date) required to complete the new vendor questionnaire and file it with [a school district] for existing contracts?

2. If a vendor does not comply with a Chapter 176 disclosure requirement, does [a school district] have any enforcement responsibility? Must [a school district] cease doing business with the vendor?

3. If [a school district] receives a questionnaire that indicates there is no conflict of interest, must it be posted on [a school district's] website?

4. What is the responsibility of [a school district] to notify vendors regarding the requirements of Texas Local Government Code Chapter 176? Must [a school district] notify the vendor in writing? Does a notice posted on [a school district's] website meet the requirement?

5. Does Texas Local Government Code section 176.002(a)(2) require all sales personnel or agents of a vendor to also complete the questionnaire?

Neeley Request Letter, *supra* note 2, at 1. Commissioner Neeley finally asks whether chapter 176 applies to "open-enrollment charter schools operating under Subchapter D, Chapter 12 of the Texas Education Code, or to Regional Education Service Centers organized under Chapter 8 of the Texas Education Code." *Id.* at 2. In addition to these questions, Commissioner Neeley also asks us to consider questions posed by the private law firm of Schwartz and Eichelbaum, P.C., on behalf of its school district clients.[3] Those questions are:

---

[2]Letter from Shirley J. Neeley, Ed.D., Commissioner of Education, Texas Education Agency, to Honorable Greg Abbott, Attorney General of Texas (Mar. 2, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Neeley Request Letter].

[3]Letter from Jason S. Scott, Schwartz & Eichelbaum, P.C., to David Andersen, General Counsel, Texas Education Agency (Feb. 15, 2006) (attached to Neeley Request Letter) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Schwartz Letter].

1.  Chapter 176 requires local government officers to file a disclosure form when they or certain family members receive gifts worth more than $250 from a vendor in a twelve-month period. Does this disclosure requirement apply even when the vendors themselves are family members? Other laws prohibiting gifts to public officials contain exceptions for such family members. Do the same exceptions apply to Chapter 176?

2.  The reporting requirements of Chapter 176 are triggered if a vendor gives gifts valued at more than $250 to the local government official or certain family members of the local official. Is this amount per family member or per family unit? In other words, if the local official and each qualifying family member receive $250 worth of gifts or less, does a disclosure still have to be filed?

3.  Chapter 176 requires vendors that contract with local governmental entities for the sale of property, goods, or services to file a disclosure form. Does this provision apply to vendors who provide goods or services to the governmental entity at significantly reduced prices, as a way of giving back to the community? For instance, what if a local dry cleaner agrees to clean a school district's band uniforms for a nominal $1 fee per uniform or a local hardware store provides paint for a district's drama department at cost? Must these businesses file disclosure forms? Similarly, must local governmental officials related to such business owners file disclosure forms?

4.  Many local government officials are also attorneys and may have clients who qualify as vendors. In the vast majority of cases, the identities of an attorney's clients are not confidential. However, an exception to this general rule protects the client's identity from disclosure if that information would reveal the confidential purpose for which the attorney was consulted. Should the requirements of Chapter 176 and the duty of confidentiality conflict, attorneys need to know which takes precedence so that clients may be informed[.]

Schwartz Letter, *supra* note 3, at 2–3 (footnotes omitted). Because all of these questions relate to Chapter 176 and were received in close proximity to one another, we have consolidated these requests. Where possible we will address related questions together.

I.     **Operation of chapter 176, Local Government Code**

Chapter 176 of the Local Government Code was enacted by the Seventy-ninth Legislature in House Bill 914, authored by Representatives Beverly Woolley and Martha Wong, and sponsored by Senator Tommy Williams, to provide a means by which potentially conflicting relationships between vendors and members of a local governmental body could be disclosed to the public. *See* Act of May 26, 2005, 79th Leg., R.S., ch. 1014, 2005 Tex. Gen. Laws 3429; *see also Hearings on House Bill 914 Before the Senate Comm. on State Affairs*, 79th Leg., R.S. (May 19, 2005) (statement

of Senator Tommy Williams) ("[I]t's imperative that taxpayers have access to information on details about who is entering into contracts with local governmental entities. House Bill 914 seeks to improve the transparency by allowing taxpayers to be informed as to which local government officials have a connection to vendors . . . who conduct business with local governmental entities."). Chapter 176 applies to a person, or agent thereof, who "contracts or seeks to contract for the sale or purchase of property, goods, or services with a local governmental entity." TEX. LOC. GOV'T CODE ANN. § 176.002(a)(1) (Vernon Supp. 2005). A "local governmental entity" ("entity") includes all political subdivisions, as well as a "local government corporation, board, commission, district, or authority to which a member is appointed by the commissioners court of a county, the mayor of a municipality, or the governing body of a municipality." *Id.* § 176.001(3).

When a governing member of an entity, or a "local government officer" ("officer") has a specified relationship with a person to whom chapter 176 applies, the officer must file a conflicts disclosure statement ("statement"). *See id.* §§ 176.001(4), .003. The requirement of the statement is triggered only when a person to whom chapter 176 applies, i.e., a "vendor,"[4] "has contracted with the local governmental entity or the local governmental entity is considering doing business with the person" and one of the specified relationships between the vendor and the officer exists. *See id.* § 176.003(a). The statement is required when the person has "an employment or other business relationship with the officer or a family member of the officer that results in the officer or family member receiving taxable income," or "has given to the local government officer or a family member of the officer one or more [specified gifts]."[5] *Id.* § 176.003(a)(2)(A), (B). Among other things, the statement requires the officer to disclose, under oath and under penalty of perjury, the relationship with, and any gift received from, the vendor. *See id.* § 176.004. Failure to file the statement is a Class C misdemeanor. *See id.* § 176.003(c). The officer must file the statement with the records administrator of the entity within a certain period of time. *See id.* § 176.003(b). Chapter 176 provides a defense to prosecution, essentially a grace period of seven days. *See id.* § 176.003(d).

In addition to the requirement for officers, vendors must file a conflict of interest questionnaire ("questionnaire") with the records administrator of the appropriate local entity. *See id.* § 176.006(a). The vendor must file the questionnaire within a specified period of time after the date the vendor "begins contract discussions or negotiations with the local governmental entity; or . . . submits . . . an application, response to a request for proposals or bids, correspondence, or another writing related to a potential agreement." *Id.* The questionnaire generally requires the vendor to identify and disclose different affiliations or business relationships with each officer of the

---

[4]We use the term vendor throughout this opinion as shorthand for the statutory language "a person who . . . contracts or seeks to contract . . . with a local governmental entity." TEX. LOC. GOV'T CODE ANN. § 176.002(a)(1) (Vernon Supp. 2005). It is not our intent to give the term any meaning inconsistent with chapter 176, and we do not use it as a term of art.

[5]Section 176.003(a)(2)(B) provides that a statement is required when a vendor "has given to the local government officer or a family member of the officer one or more gifts, other than gifts of food, lodging, transportation, or entertainment accepted as a guest, that have an aggregate value of more than $250 [in certain time periods.]" *Id.* § 176.003(a)(2)(B).

entity. *See id.* § 176.006(c). A vendor commits a misdemeanor offense if the vendor does not file the questionnaire within the requisite time period, but again a defense to prosecution in the form of a seven-day grace period is available. *See id.* § 176.006(f)–(g).

The records administrator for the entity is required to maintain a list of "local government officers of the entity and shall make that list available to the public and any person who may be required to file a questionnaire." *Id.* § 176.007. In addition, entities are required to "provide access to the statements and questionnaires . . . on the Internet website maintained by the local governmental entity." *Id.* § 176.009(a). Larger entities have additional internet website listing requirements. *See id.* § 176.009(b).

## II.     Legal principles

In construing chapter 176, we must follow the cardinal rule of statutory construction and determine the legislative intent as discerned primarily from the plain meaning of the words used in the statute. *See In re Doe*, 19 S.W.3d 249, 255 (Tex. 2000); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999) (court construes a statute by looking to the plain meaning of the statute's language). We look beyond the literal text of the statute only where the language of the statute is ambiguous or would lead to absurd results the legislature could not possibly have intended. *See Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex. Crim. App. 1991). At the same time, we must take the statute as we find it. *See RepublicBank Dallas v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985). Texas courts avoid "under the guise of statutory construction, amend[ing] a statute by adding words to it, no matter how desirable such additions might seem." *In the Interest of S.H.A.*, 728 S.W.2d 73, 83 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); *see also Goldman v. Torres*, 341 S.W.2d 154, 158 (Tex. 1960) (stating that reading language into a statute usurps the legislature's power). With these principles in mind, we turn to the questions.

## III.    Analysis

### 1.    Construction of "contracts or seeks to contract"

Because it is a threshold matter in the applicability of chapter 176, we first address the meaning of "contracts or seeks to contract." Representatives Woolley and Smithee ask us to construe the phrase "contracts or seeks to contract" and whether it includes small or routine purchases. *See* Woolley Request Letter, *supra* note 1, at 3 (question 3). A two-part analysis is needed to properly construe the phrase "contracts or seeks to contract for the sale or purchase of property, goods, or services with a local governmental entity." TEX. LOC. GOV'T CODE ANN. § 176.002(a)(1) (Vernon Supp. 2005). First we deal with "contracts or seeks to contract . . . with a local governmental entity." Absent a definition in the statute, we look to a term's ordinary meaning. *See Fitzgerald*, 996 S.W.2d at 865–66 (ordinary meaning). As a noun a "contract" is a promise, or set of promises, the performance of which the law recognizes to be a duty and for the breach of which it confers a remedy. *See Foster v. Wagner*, 343 S.W.2d 914, 917 (Tex. Civ. App.—El Paso 1961, writ ref'd n.r.e.). As a verb, "contract" means "to agree upon, make a contract" or to "arrange

for by contract." III THE OXFORD ENGLISH DICTIONARY 835 (2d ed. 1989). The term by itself and without modification or limitation includes express contracts in which the terms are stated by the parties and implied contracts which arise from the acts and conduct of the parties. *See Harrison v. Williams Dental Group, P.C.*, 140 S.W.3d 912, 916 (Tex. App.—Dallas 2004, no pet.); *see also* Tex. Att'y Gen. Op. No. GA-0429 (2006) at 4. "Seek" has been defined by a Texas court to mean to "ask for, demand, request" or "to inquire for: ask for: entreat, request." *Jones v. State*, 175 S.W.3d 927, 932 (Tex. App.—Dallas 2005, no pet.). Thus one who contracts or seeks to contract with an entity is one who agrees to, makes, or arranges for, or inquires for, asks for, or requests from an entity a promise creating legal obligations.

The second part of the phrase relates to the subject matter of the contract. The plain language of section 176.002 provides that the subject matter of the contract involves the sale or purchase of "property, goods, and services." TEX. LOC. GOV'T CODE ANN. § 176.002(a)(1) (Vernon Supp. 2005). These are broad terms and no provision in chapter 176 limits or restricts their scope or application and so they include the sale or purchase of all property, goods, and services. Thus the phrase "contracts or seeks to contract for the sale or purchase of property, goods, or services with a local governmental entity" refers to one who agrees to, makes, or arranges for, or inquires for, asks for, or requests from an entity a promise creating legal obligations concerning the sale or purchase of property, real or personal, and any goods and services.

Unlike chapter 171 of the Local Government Code pertaining to conflicts of interest, chapter 176 contains no minimum threshold amount for contractual transactions.[6] Chapter 171 provides that an officer must disclose any substantial interests the officer has in a business interest or real property when that business interest or real property is the subject of a vote or decision before the entity. *See id.* § 171.004 (Vernon 1999). A substantial interest is generally defined through a minimum threshold of at least 10 percent of the business interest or gross income of the officer or $2,500 of the market value of any real property. *See id.* § 171.002. Chapter 176 does not contain any minimum threshold contract amount. *See generally id.* ch. 176 (Vernon Supp. 2005). It requires that a vendor who merely contracts or seeks to contract with an entity regarding the listed subject matters is subject to the chapter. *See id.* § 176.002(a)(1). In addition, the chapter does not contain any exclusions for *de minimis* transactions. *See generally id.* ch. 176. Pursuant to the plain language of the statute, we conclude that even contracts involving small and routine purchases are subject to chapter 176.[7]

---

[6]The statute does provide a minimum threshold amount in reference to gifts given to an officer, which we will address later in this opinion. *See* TEX. LOC. GOV'T CODE ANN. § 176.003(a)(2)(B) (Vernon Supp. 2005).

[7]A brief submitted to this office suggests that this language should be construed to apply to purchases above a *de minimis* threshold, *see* Brief from Hunter Burkhalter and Darcy Alan Frownfelter, Kemp Smith LLP, to Honorable Greg Abbott, Attorney General of Texas, at 3 (Apr. 12, 2006) (on file with the Opinion Committee), or only to express contracts. *See* Brief from Kathryn Hoang, Legal Counsel, Texas Municipal League, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General, at 4 (Apr.13, 2006) (on file with the Opinion Committee) [hereinafter TML Brief]. It has also been argued that the language should be construed to not apply to routine purchases. *See* Brief from Jason S. Scott, Schwartz & Eichelbaum, P.C., to Honorable Greg Abbott, Attorney General of Texas, at 7 (Apr. 13,

(continued...)

## 2.    Business relationships and affiliations

The Woolley request letter asks about the meaning of the term "business relationship" as it is used in section 176.003 and whether it would include a personal or business savings account that generated taxable interest for the officer or family member. *See* Woolley Request Letter, *supra* note 1, at 2 (question 1). It also asks us to define the terms "business relationship" and "affiliations" as used in section 176.006 and state whether these terms include personal or business loans that generate taxable interest for vendors such as financial institutions. *See id.* (question 2). Finally, it inquires about the phrase "any other affiliation or business relationship that might cause a conflict of interest" as used in section 176.006(c)(7). *Id.* (question 3). Because these three questions inquire about the same terms, we will address them together.

Though critical to the requirements of the statute, the term "business relationship" is not defined in chapter 176. *See* TEX. LOC. GOV'T CODE ANN. § 176.001 (Vernon Supp. 2005). Similarly, chapter 176 does not define the term "affiliation." *See id.* We do not find a definition of these exact terms in any Texas statute or judicial opinion. Thus we look to their ordinary meaning. *See Fitzgerald*, 996 S.W.2d at 865–66. A Texas case does provide some information as to a definition of "business." *See Hallman v. Allstate Ins. Co.*, 114 S.W.3d 656 (Tex. App.—Dallas 2003), *rev'd*, 159 S.W.3d 640 (Tex. 2005). In the context of an insurance policy insuring against loss incurred in the business of the insured, the court examined the meaning of the terms "trade," "profession," and "occupation," used in the policy to define business. *See id.* at 662. The court said that the common thread of business was the idea that "a livelihood or means of earning a living" motivated the activity. *Id.* This office recently said that the term business "commonly connotes activity for commercial profit." Tex. Att'y Gen. Op. No. GA-0375 (2005) at 3; *see also* Tex. Att'y Gen. Op. No. DM-310 (1994) at 3. Moreover, section 176.003(a)(2)(A) provides that the "business relationship" must result in "taxable income." TEX. LOC. GOV'T CODE ANN. § 176.003(a)(2)(A) (Vernon Supp. 2005). Thus we construe the term "business" in a limited manner to mean commercial activity. The term "relationship" is defined by the dictionary as the "way in which two or more concepts, objects, or people are connected, or the state of being connected." THE NEW OXFORD AMERICAN DICTIONARY 1437 (2001).

When these definitions are considered together, a "business relationship" for purposes of sections 176.003 and 176.006 is a connection between two or more parties based on a commercial activity of one of the parties. *See, e.g., Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) ("Statutory terms should be interpreted consistently in every part of an act."). Thus pursuant to section 176.003 an officer has a "business relationship" with a vendor when the officer has a

---

[7](...continued)
2006) (on file with the Opinion Committee) [hereinafter Schwartz Brief]. While these suggestions may be reasonable, we are constrained by the clear language of the statute. The phrase "contracts or seeks to contract" in chapter 176 is not modified or limited in any way. We cannot insert additional words into a statute unless it is necessary to give effect to clear legislative intent. *See Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 552 (Tex. 1981). We see no indication in the language of the statute or the legislative history that the legislature intended a more narrow application of the phrase "contracts or seeks to contract."

connection to a vendor based on the commercial activity of one of them. The officer must file a statement when the "business relationship" results in taxable income.[8] *See* TEX. LOC. GOV'T CODE ANN. § 176.003(a)(2)(A) (Vernon Supp. 2005).

Representatives Woolley and Smithee also ask about the term "affiliation" as used in section 176.006. *See* Woolley Request Letter, *supra* note 1, at 2. The term is undefined by statute or judicial opinion so we look to its ordinary meaning. *See Fitzgerald*, 996 S.W.2d at 865–66. A Texas court has defined the root term "affiliate" as "a person, organization, or establishment associated with another as a subordinate, subsidiary, or member." *Kingston v. Helm*, 82 S.W.3d 755, 765 (Tex. App.—Corpus Christi 2002, pet. denied). Section 176.006 requires the vendor to describe in the questionnaire any "affiliations *or* business relationships" the vendor may have with an officer or the entity. TEX. LOC. GOV'T CODE ANN. § 176.006(b) (Vernon Supp. 2005) (emphasis added). Based on a reading of the statutory language and the lack of an answer in the legislative history, it is unclear what the legislature intended by the use of the word "affiliation." "The word 'or' in ordinary and natural use has a disjunctive meaning" and indicates an alternative between different or unlike things. *See Burnett v. State*, 514 S.W.2d 939, 940 (Tex. Crim. App. 1974). Assuming the legislature intended the word "or" to have a disjunctive meaning, we construe "affiliation" to be different from a "business relationship." As we stated previously, the ordinary definition of "affiliation" is an association between persons or between a person and an organization. Thus, under section 176.006, a vendor that is associated with an officer outside of a business relationship has an affiliation with that officer and must file a questionnaire. We believe the question of whether there is an "affiliation" between an officer and a vendor will most likely be a question of fact. *See* Tex. Att'y Gen. Op. No. GA-0139 (2004) at 5 (questions of fact are inappropriate for the opinion process).

With regard to both of these terms, Representatives Woolley and Smithee inquire specifically about savings accounts and loans with financial institutions that generate taxable interest either to the entity or the vendor. *See* Woolley Request Letter, *supra* note 1, at 2. Section 176.002(a) governing the applicability of chapter 176 applies to a "person." *See* TEX. LOC. GOV'T CODE ANN. § 176.002(a) (Vernon Supp. 2005). When a statute does not require a different definition, a person "includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." *See* TEX. GOV'T CODE ANN. § 311.005 (Vernon 2005) (Code Construction Act). Chapter 176 does not indicate that "person" has a contrary definition. *See generally* TEX. LOC. GOV'T CODE ANN. ch. 176 (Vernon Supp. 2005). Because a "person" subject to the act under section 176.002 can include corporate entities, the statute applies to a financial institution. The offering and holding of the savings account by the financial institution for the officer is a business relationship as we have construed the term. The Woolley Request Letter represents that the interest received is taxable income. *See* Woolley Request Letter,

---

[8]We are not asked about the term "employment relationship" in section 176.003(a)(2)(A), so we do not address it. *See* Woolley Request Letter, *supra* note 1; Neeley Request Letter, *supra* note 2; Schwartz Letter, *supra* note 3. Pursuant to the plain language of the statute, an officer must file a statement when the officer has an employment relationship with a vendor. *See* TEX. LOC. GOV'T CODE ANN. § 176.003(a)(2)(A) (Vernon Supp. 2005).

*supra* note 1, at 2. Thus a personal or business interest-bearing savings account that generates taxable income to the officer or the officer's family member would trigger the requirements of chapter 176. For the same reason, a personal or business loan from an officer that produces taxable income to the vendor is a business relationship that would trigger the requirements of chapter 176.

We next address the question concerning "any other affiliation or business relationship that might cause a conflict of interest." Woolley Request Letter, *supra* note 1, at 2. We cannot provide an exhaustive list of all that the phrase encompasses. *See id.* Based on our construction of the terms "business relationship" and "affiliation," the phrase broadly encompasses a connection between persons based on a commercial activity or any other association between persons or persons and organizations.[9]

### 3.  Professional services providers

Representatives Woolley and Smithee inquire whether chapter 176 applies to professional services providers. *See* Woolley Request Letter, *supra* note 1, at 2 (question 4). The statute applies to a "person who . . . contracts or seeks to contract for the sale or purchase of property, goods, or *services* with a local governmental entity." TEX. LOC. GOV'T CODE ANN. § 176.002(a)(1) (Vernon Supp. 2005) (emphasis added). By its plain language, chapter 176 applies to contracts for the sale or purchase of services with an entity. *See* TEX. LOC. GOV'T CODE ANN. § 176.002(a)(1) (Vernon Supp. 2005); *see also Fitzgerald*, 996 S.W.2d at 865–66 (courts construe a statute by looking to the plain meaning). The term "services" is a broad term that embraces all services, including professional services. No provision in the statute limits the scope or application of the term. We note that when the legislature wants to exclude professional services from a statutory requirement, it does so expressly. *See Corum Mgmt. Co., Inc. v. Aquayo Enters., Inc.*, 755 S.W.2d 895, 897 (Tex. App.—San Antonio 1988, writ denied); Tex. Att'y Gen. Op. Nos. GA-0409 (2006) at 5, GA-0316 (2005) at 4–5; *see also* TEX. EDUC. CODE ANN. § 44.031(f) (Vernon Supp. 2005) (expressly excluding professional services contracts); TEX. LOC. GOV'T CODE ANN. §§ 252.043(i), 254.024(b), 271.056(4) (Vernon Supp. 2005) (same), 325.046(b), 351.144(b) (Vernon 1999) (same). Chapter 176 does not expressly exclude professional services contracts from its provisions. Thus we conclude that chapter 176 applies to contracts with professional services providers.

### 4.  Retention of information

Representatives Woolley and Smithee ask about retention of information under the statute. *See* Woolley Request Letter, *supra* note 1, at 2 (question 5). Chapter 176 does not provide an

---

[9]The Texas Association of School Boards Legal Assistance Fund ("TASB LAF") invites us to "provide a clear framework within which officers can consider their particular situations" especially in light of chapter 176's criminal provisions. Brief from Andrea Slater Gulley, Underwood, Wilson, Berry, Stein & Johnson, P.C., to Honorable Greg Abbott, Attorney General of Texas, at 8 (Apr. 20, 2006) (on file with the Opinion Committee) [hereinafter TASB LAF Brief]. "[C]ourts, may not, under the guise of construction, amend a statute by adding provisions thereto, no matter how desirable such additions might seem . . . ." *A.M. Servicing Corp. of Dallas v. State*, 380 S.W.2d 747, 748 (Tex. Civ. App.—Dallas 1964, no writ). Because to provide the clear framework that TASB LAF invites us to do would require us to add language that is simply not present in chapter 176, we must decline the invitation.

answer. *See generally* TEX. LOC. GOV'T CODE ANN. ch. 176 (Vernon Supp. 2005). However, the statement and questionnaire are local government records subject to the Local Government Records Act. *See id.* §§ 201.003(8) (defining local government record), 201.001 (Vernon 1999) (entitling provision). As such, they must be maintained in accordance with the entity's records retention schedule. *See id.* §§ 203.002–.005 (Vernon 1999) (governing county records), 203.021–.026 (governing records of all other local government offices); *see also id.* §§ 203.041–.050 (records control schedules); 13 TEX. ADMIN. CODE §§ 7.121–.125 (2006) (Tex. State Library & Archives Comm'n, Records Retention Schedules). Neither chapter 176 nor the records retention schedules provide for a specified time period during which an entity must make available the statement or the questionnaire on its website. *See generally* TEX. LOC. GOV'T CODE ANN. ch. 176 (Vernon Supp. 2005); 13 TEX. ADMIN. CODE §§ 7.121–.125 (2006) (Tex. State Library & Archives Comm'n, Records Retention Schedules).

## 5.     Employees and agents of corporate and other legal bodies

Two questions presented to us concern the applicability of chapter 176 to personnel of corporate entities or partnerships. Representatives Woolley and Smithee inquire whether chapter 176's disclosure requirements apply to some or all individual partners or employees of a partnership or corporation. *See* Woolley Request Letter, *supra* note 1, at 2 (question 6). Commissioner Neeley asks whether all sales personnel or agents of a vendor are subject to chapter 176. *See* Neeley Request Letter, *supra* note 2, at 1 (question 5).

Chapter 176 applies to any "person who . . . contracts or seeks to contract . . . with a local governmental entity." TEX. LOC. GOV'T CODE ANN. § 176.002(a)(1) (Vernon Supp. 2005). Absent indication to the contrary, a partnership, corporation, or any other corporate entity is a "person." *See* TEX. GOV'T CODE ANN. § 311.005 (Vernon 2005). We see no indication that the legislature intended to exclude corporate bodies from the reach of the disclosure requirements, thus a partnership, corporation or other corporate body is a "person" subject to chapter 176 under the plain language of section 176.002(a)(1). We believe that when a partnership, corporation or other legal entity contracts or seeks to contract with the entity, the partnership, corporation or other legal entity is the party obligated to file the statement.

But chapter 176 also applies to an "agent of a person described by Subdivision (1) in the person's business with a local governmental entity." *Id.* § 176.002(a)(2). The legislature did not define the term "agent" as used in subsection 176.002(a)(2) and did not differentiate subsection 176.002(a)(2) from subsection 176.002(a)(1). Absent a statutory definition, we look for the common meaning of the term. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). And we construe words with a technical or particular meaning according to that technical or particular meaning. *See id.* § 311.011(b). Because the legislature used the term "agent" rather than other general terms such as "personnel" or "employee," we believe it is reasonable to construe "agent" according to its meaning under the legal principles of agency. Generally, an "agent" is a third party "who undertakes to transact some business, or to manage some affair for another, by the authority and on account" of such other person. *Boyd v. Eikenberry,* 122 S.W.2d 1045, 1047 (Tex. 1939). Considering that definition of "agent," we do not construe the term in subsection 176.002(a)(2) to include the individuals who compose the legal entity.

Accordingly, we conclude that as applied to a partnership, corporation or other legal entity, chapter 176.002's disclosure requirements apply to only the legal entity that is the "person" contracting or seeking to contract with the local governmental entity. Third-party individuals who act as agents under agency law for a legal entity contracting or seeking to contract with the local governmental entity are independently subject to chapter 176 under section 176.002(a)(2).

## 6. Wholesale adoption of conflicts disclosure statements

Representatives Woolley and Smithee ask whether a "person seeking to contract with a local governmental entity [would] comply with the requirements of Chapter 176 if the person discloses affiliations and business relationships with all business entities disclosed by the local governmental entity to the person as having a triggering relationship with a local government officer and discloses affiliations and business relationships with all employees and outside contractors disclosed by the local governmental entity to the person as making recommendations concerning the proposed contract, even if that disclosure proves to be incomplete or the local governmental entity fails to make any such disclosure despite the person's request, absent actual knowledge of the person to the contrary." Woolley Request Letter, *supra* note 1, at 2–3 (question 7). As we understand it, the letter asks whether a vendor can request from the local governmental entity a list of everything disclosed on the various statements and then, using the information on the list, prepare the vendor's own response to the questionnaire using only the list disclosed by the entity and still comply with chapter 176.

The statute requires a vendor to prepare a response to a questionnaire that identifies and describes specified relationships and affiliations. *See* TEX. LOC. GOV'T CODE ANN. § 176.006(c)(1)–(7) (Vernon Supp. 2005). To the extent a vendor simply lists the various business interests and relationships disclosed by the officers, the vendor does not comply with the requirement that the vendor "describe" the various relationships and affiliations. *See id.* § 176.006(c)(1), (4)–(7). Similarly, to the extent the list provided by the entity does not disclose each and every relationship or affiliation of the vendor such that the vendor's disclosure fails to "identify" and "describe" each of the vendor's specified relationships and affiliations, the vendor does not comply with the statute.

## 7. Enforcement responsibilities of local governmental entities

Representatives Woolley and Smithee inquire whether "local governmental entities have a responsibility to require persons who contract or seek to contract with local governmental entities to comply with Chapter 176 prior to entering into a contract with the local governmental entity." Woolley Request Letter, *supra* note 1, at 3 (question 9). They ask whether the "failure of a contractor to comply with the requirements of Chapter 176 [has] any impact on the validity of a contract between the local governmental entity and the contractor." *Id.* Commissioner Neeley asks on behalf of school districts whether an entity has a responsibility to enforce chapter 176 and whether an entity must cease to do business with a vendor who does not comply with the chapter. *See* Neeley Request Letter, *supra* note 2, at 1 (question 2). Finally, Commissioner Neeley inquires about the responsibility of governmental entities to notify vendors regarding the requirements of Texas Local Government Code chapter 176. *See id.* (question 4).

Chapter 176 requires a vendor to prepare and file a questionnaire. *See* TEX. LOC. GOV'T CODE ANN. §§ 176.002, .006 (Vernon Supp. 2005). The statute prescribes the punishment for failure to comply with its mandate—an officer or vendor commits a Class C misdemeanor for failing to file the conflict of interest questionnaire or conflicts disclosure statement. *See id.* §§ 176.003(c) (local government officer), 176.006(f) (vendor). Because the statute does not impose it, we do not believe the entity has an affirmative duty to independently require vendors to comply with chapter 176 prior to entering into a contract with the local governmental entity. Moreover, Texas law "recognizes that there is no duty to inform others of the requirements of the law because all persons are presumed to know the law." *Gabaldon v. Gen. Motors Corp.*, 876 S.W.2d 367, 369 (Tex. App.—El Paso 1993, no writ) (quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 n.3 (Tex. 1990)). For these reasons, we conclude that a local governmental entity has no statutory responsibility to "enforce" chapter 176. For the same reasons, we conclude that an entity has no responsibility to notify vendors of the requirements of chapter 176.

Absent any provision expressly providing that any such contract is void, we believe a vendor's failure to file the questionnaire does not void a contract with the entity, nor does it require the entity to cease doing business with the noncomplying vendor.

Our conclusion that an entity does not have an affirmative responsibility to require compliance with the statute or to enforce its provisions does not preclude an entity from imposing a requirement that a vendor comply with chapter 176 as a matter of policy. Should an entity choose to impose such a requirement, it could also impose, as a term of the contract, a requirement that any contract entered into with a vendor who did not comply with chapter 176 is void or voidable or that the entity would cease doing business with the vendor.

### 8. Application of chapter 176 in absence of relationship

Representatives Woolley and Smithee inquire whether chapter 176 "requires a person who contracts or seeks to contract with a local governmental entity to file a disclosure questionnaire if the person has no business or financial relationships or affiliations to disclose." Woolley Request Letter, *supra* note 1, at 3 (question 10). Section 176.006 requires that "a person described by Section 176.002(a) *shall* file a completed conflict of interest questionnaire." TEX. LOC. GOV'T CODE ANN. § 176.006(a) (Vernon Supp. 2005) (emphasis added). The statute does not establish some trigger for the filing of a questionnaire as it does for the statement required of an officer. *Compare id.* § 176.003(a) ("A local government officer shall file a conflicts disclosure statement . . . *if*: . . ."), *with id.* § 176.006(a) ("A person described by Section 176.002(a) *shall* file . . . ."). The word "shall" usually connotes a mandatory duty. *See* TEX. GOV'T CODE ANN. § 311.016(2) (Vernon 2005). Thus we believe a vendor must file a questionnaire even if the vendor has no business relationships or affiliations to disclose.

In a related question, Commissioner Neeley inquires whether a questionnaire that discloses no relationship must be posted on an entity's website. *See* Neeley Request Letter, *supra* note 2, at 1 (question 3). Section 176.009 requires that the entity "provide access to the statements and questionnaires filed under [chapter 176] on the Internet website maintained by the local

governmental entity." TEX. LOC. GOV'T CODE ANN. § 176.009(a) (Vernon Supp. 2005). It does not limit the mandatory requirement to only those statements and questionnaires that reveal relationships and affiliations. Therefore we conclude that an entity receiving a questionnaire indicating no conflict of interest must post the questionnaire on the entity's website.

### 9.   Existing vendors

Commissioner Neeley asks whether existing vendors are required to complete the new vendor questionnaire. *See* Neeley Request Letter, *supra* note 2, at 1 (question 1). Chapter 176 became effective on June 18, 2005. *See* Act of May 26, 2005, 79th Leg., R.S., ch. 1014, 2005 Tex. Gen. Laws 3429, 3432. Section 3 of the enacting legislation provides that a vendor subject to chapter 176 under section 176.002(a) "is not required to file a conflict of interest questionnaire . . . before January 1, 2006." *Id.* § 3(b), at 3432. Additionally, the statutory language is prospective. A person is subject to chapter 176 if the person "contracts or seeks to contract" with a local governmental entity. TEX. LOC. GOV'T CODE ANN. § 176.002(a) (Vernon Supp. 2005). "A statute is presumed to be prospective in its operation unless expressly made retrospective." TEX. GOV'T CODE ANN. § 311.022 (Vernon 2005). Texas courts apply statutes retrospectively only if "it appears by fair implication from the language used that it was the intention of the Legislature to make it applicable to both past and future transactions." *State v. Humble Oil & Refining Co.*, 169 S.W.2d 707, 708–09 (Tex. 1943). We find nothing in the language of the statute suggesting that vendors who contracted with a local governmental entity prior to January 1, 2006, must file a questionnaire.

We believe the language of the statute requires the conclusion that vendors with pre-existing contracts are not required to file a questionnaire. In context, the phrase "seeks to contract" describes a vendor who is engaged in the attempt to acquire a contract with an entity. *See supra* p. 7 (defining "seek"). A vendor in an existing contract with an entity is not one "seek[ing] to contract" with the entity. The term "contracts" in context describes a vendor who prospectively enters into a contract, not a vendor that has already done so. *See supra* pp. 6–7 (defining "contract"). Additionally, the text of section 3 of the enabling legislation does not require the questionnaire to be filed before January 1, 2006. *See* Act of May 26, 2005, 79th Leg., R.S., ch. 1014, § 3, 2005 Tex. Gen. Laws 3429, 3432. And because we have concluded that a contract is not voided by a violation of chapter 176, *see supra* p. 13, the information provided by chapter 176 has limited value where the contract has already been voted on by the entity.

Therefore a vendor who has an existing contract with an entity is not required to complete and file the questionnaire. However, we believe that amendments to an existing contract would subject the vendor to the requirements of chapter 176 because the resulting amended contract is essentially a new contract. *See Greenbelt Elec. Co-op., Inc. v. Johnson*, 608 S.W.2d 320, 325 (Tex. Civ. App.—Amarillo 1980, no writ) ("By law, once the contract was modified by the mutual consent of the original parties, it became a new agreement, taking the place of the old and consisting of the new terms and as much of the old as remained unchanged.").

**10.     Charter schools and regional education service centers**

Commissioner Neeley also asks about the applicability of chapter 176 to open-enrollment charter schools and regional education service centers organized under the Texas Education Code. Neeley Request Letter, *supra* note 2, at 2.  Chapter 176 applies to "local governmental entities" which means

> a county, municipality, school district, junior college district, or other political subdivision of this state or a local government corporation, board, commission, district, or authority to which a member is appointed by the commissioners court of a county, the mayor of a municipality, or the governing body of a municipality. The term does not include an association, corporation, or organization of governmental entities organized to provide to its members education, assistance, products, or services or to represent its members before the legislative, administrative, or judicial branches of the state or federal government.

TEX. LOC. GOV'T CODE ANN. § 176.001(3) (Vernon Supp. 2005).  To answer this question we must determine whether an open-enrollment charter school or regional education service center falls within the definition of "local governmental entity."

An open-enrollment charter school is not a county, municipality, junior college district, or other political subdivision of Texas. *See* Tex. Att'y Gen. Op. No. JC-0378 (2001) at 4 ("An open-enrollment charter school is not 'a district, county, municipality, precinct, . . . or other political subdivision of this state.'").  Therefore, under the definition of "local governmental entity" an open-enrollment charter school is an entity subject to chapter 176 only if it is a "local government corporation, board, commission, district or authority to which a member is appointed by [listed entities]." TEX. LOC. GOV'T CODE ANN. § 176.001(3) (Vernon Supp. 2005). As an independent school "separate and apart from local independent school districts," an open-enrollment charter school is not a "local government corporation, board, commission, district or authority." TEX. LOC. GOV'T CODE ANN. § 176.001(3) (Vernon Supp. 2005); *see also* Tex. Att'y Gen. Op. Nos. GA-0069 (2003) at 1 (describing charter schools as "independent public schools formed by individuals or organizations that operate according to a charter"), JC-0378 (2001) at 1, 3 (recognizing that the individual or organization operating a school under charter was not a governmental body or school district).  Therefore an open-enrollment charter school is not an entity under chapter 176.

We recognize that open-enrollment charter schools are subject to many of the same laws applicable to political subdivisions that are designed to promote openness and fairness in government. *See* TEX. EDUC. CODE ANN. §§ 12.1051 (Vernon Supp. 2005) ("Applicability of Open Meetings and Public Information Laws"); 12.1052 ("Applicability of Laws Relating to Local Government Records"); 12.1053 ("Applicability of Laws Relating to Public Purchasing and Contracting"); 12.1054 ("Applicability of Laws Relating to Conflict of Interest"). However, open-

enrollment charter schools were expressly subjected to these open government provisions. The absence of an express reference in chapter 176 to open-enrollment schools leads us to conclude that the statute does not apply to open-enrollment charter schools that fall outside the scope of the definition of "local governmental entity" under chapter 176.

Chapter 8 of the Education Code provides for regional education service centers, which are designed primarily to assist school districts in improving student performance and increasing the efficiency and effectiveness of school operations. *See* TEX. EDUC. CODE ANN. § 8.002 (Vernon Supp. 2005). The commissioner of the Texas Education Agency provides for the establishment and operation of regional education service centers. *See id.* § 8.001(a). The commissioner is also directed to establish rules for the "local selection, appointment, and continuity of membership of regional education service center boards of directors." *Id.* § 8.003(b). Rules promulgated under that rule-making authority provide that members of the board of directors for a regional education service center are elected by the boards of trustees of the school districts in the territory of the education service center. *See* 19 TEX. ADMIN. CODE § 53.1001(b)(2) (2006) (Tex. Educ. Agency, Reg'l Educ. Serv. Ctrs.). A regional education service center is not a "county, municipality, school district, . . . or authority to which a member is appointed by the commissioners court of a county, the mayor of a municipality, or the governing body of a municipality." TEX. LOC. GOV'T CODE ANN. § 176.001(3) (Vernon Supp. 2005). Because regional education service centers do not fall within the definition of "local governmental entity," they are not subject to chapter 176.

As with open-enrollment charter schools, many of the laws requiring openness and fairness of political subdivisions are expressly applicable to regional education service centers. *See* TEX. EDUC. CODE ANN. §§ 8.008 (Vernon Supp. 2005) ("Applicability of Certain Laws Relating to Political Activities"), 8.009 ("Applicability of Certain Laws Relating to Conflict of Interest"). And as we did with respect to open-enrollment charter schools, we conclude that in the absence of an express provision regarding applicability of chapter 176 to regional education service centers, they are not subject to chapter 176 outside of the definition of "local governmental entity." *See supra* p. 16 (citing TEX. LOC. GOV'T CODE ANN. § 176.001(3)).

**11.  Family members are vendors**

We next opine on the disclosure requirements that apply when a vendor who contracts or seeks to contract with an entity is a family member of an officer. *See* Schwartz Letter, *supra* note 3, at 2 (question 1). We begin our analysis with the chapter's applicability provision. Chapter 176 applies to a person who "contracts or seeks to contract" with an entity. TEX. LOC. GOV'T CODE ANN. § 176.002(a) (Vernon Supp. 2005). Under the plain language of chapter 176, a family member of an officer who contracts or seeks to contract with the entity would be subject to chapter 176. *See id.* Neither section 176.002 nor chapter 176 as a whole provides an exception for family members. *See generally id.* ch. 176.

The lack of any express exceptions is especially significant when we consider other law governing acts of public officials. For instance, chapter 36 of the Texas Penal Code generally

prohibits a person from giving gifts to public officials. *See* TEX. PEN. CODE ANN. §§ 36.08, .09 (Vernon 2003). Section 36.10 expressly excludes from the prohibition, however, gifts that are given to the public official because of a personal relationship, such as from a family member. *See id.* § 36.10 (Vernon Supp. 2005). No similar provision exists in chapter 176. *See generally* TEX. LOC. GOV'T CODE ANN. ch. 176 (Vernon Supp. 2005). Therefore we conclude that the disclosure requirements of chapter 176 apply even when a vendor is a family member[10] of the officer.[11]

### 12.  Gifts

We next address the question involving the disclosure requirements triggered by the giving or receiving of gifts. *See* Schwartz Letter, *supra* note 3, at 2 (question 2). Chapter 176 requires that an officer file a statement when a vendor "has given to the . . . officer or a family member of the officer one or more gifts, . . . , that have an aggregate value of more than $250."[12] TEX. LOC. GOV'T CODE ANN. § 176.003(a)(2)(B) (Vernon Supp. 2005). Section 176.003 applies to "one or more gifts" given to "local government officer[s] or [their] family member[s]." *Id.* Chapter 176 plainly refers only to the individual officer or family members and not to the family as a unit. *See id.* § 176.003(a)(2)(B). We believe the limit of the aggregate value of $250 or more is determined by the individual officer or family member that receives the gift. Accordingly, we construe the phrase "aggregate value of more than $250" to apply to each family member rather than to the family as a unit.

### 13.  Services offered at reduced prices

We next consider the question of whether chapter 176 applies to those who contract or seek to contract with entities but who offer their services at a reduced price. *See* Schwartz Letter, *supra* note 3, at 2 (question 3). The disclosure requirements apply to a person who "contracts or seeks to contract for the sale or purchase of property, goods, or services with a local governmental entity." TEX. LOC. GOV'T CODE ANN. § 176.002(a) (Vernon Supp. 2005). Section 176.002 contains no minimum or threshold amount for the contract or any exceptions for particular types of contracts. *See id.* A vendor who agrees to provide goods or services to an entity, even at a reduced price, is

---

[10]Chapter 176 defines "family member" as a "person related to another person within the first degree of consanguinity or affinity, as described by Subchapter B, Chapter 573, Government Code." TEX. LOC. GOV'T CODE ANN. § 176.001(2) (Vernon Supp. 2005). Our conclusion regarding vendors who are family members extends only to the extent the vendor is a "family member" as defined in chapter 176.

[11]We have been urged to construe chapter 176 to not require vendors who are also family members of an officer to file a questionnaire. *See* TML Brief, *supra* note 7, at 6 ("The language of the statute . . . should not include gifts between family members and the like."); *see also* Schwartz Brief, *supra* note 7, at 11 ("There is . . . no legitimate reason for requiring local officials related to a vendor to file a conflict disclosure form listing gifts received by that vendor."). As we have previously stated, the wisdom of a particular enactment is left to the legislature. *See Smith*, 426 S.W.2d at 831.

[12]By its plain terms, chapter 176 excludes gifts of "food, lodging, transportation, or entertainment accepted as a guest." TEX. LOC. GOV'T CODE ANN. § 176.003(a)(2)(B) (Vernon Supp. 2005).

nevertheless operating under a "contract . . . for the sale or purchase of . . . goods, or services." *Id.* Therefore, pursuant to the plain language of section 176.002, we conclude that a vendor who provides goods or services to an entity at a significantly reduced price must comply with chapter 176. Whether an officer who is related to a vendor subject to chapter 176 would be required to file a statement is determined by section 176.003(a). *See id.* § 176.003 (listing circumstances when officer is required to file a conflicts disclosure statement).

### 14. Confidentiality of attorney's client

"Many local government officials are also attorneys and may have clients who qualify as vendors." Schwartz Letter, *supra* note 3, at 2. In some circumstances, the identity of a lawyer's client is protected by the attorney-client privilege. *See id.* at 2–3. With that context, we are asked whether the requirements of chapter 176 as to the statement supersede the duty of confidentiality that attorneys owe their clients. *See id.* (question 4).

The attorney-client privilege has been recognized as "the oldest of the privileges for confidential communications known to the common law." *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 647 (Tex. 1995) (quoting *United States v. Zolin*, 491 U.S. 554, 562 (1989)). Its purpose is to protect the free flow of information between attorney and client to ultimately serve the broader societal interest of the effective administration of justice. *See Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 160 (Tex. 1993). As a general rule, the identity of a client is not protected by the attorney-client privilege. *See In re Grand Jury Proceedings v. Jones*, 517 F.2d 666, 670–71 (5th Cir. 1975). There is a narrow and limited exception that protects a client's identity if revelation of a client's identity would also reveal a privileged communication. *See Jones*, 517 F.2d at 670–71; *see also In re Grand Jury Subpoena for Att'y Representing Reyes-Requena*, 913 F.2d 1118, 1125 (5th Cir. 1990); *In re Grand Jury Proceedings v. Pavlick*, 680 F.2d 1026, 1027 (5th Cir. 1982). Because the exception is narrow and depends on the nature of the specific factual circumstances, the question of when it applies in any given situation must be determined on a case-by-case basis. *See Jones*, 517 F.2d at 671–72. Questions of fact are not appropriate to the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0292 (2005) at 4. Therefore we cannot advise on when the identity of a vendor who is also a client of an attorney who is an officer may be withheld from disclosure under chapter 176 pursuant to the exception to the attorney-client privilege.

## IV.     Conclusion

We recognize that a plain language construction of chapter 176 will have a significant impact on Texas local governments and their communities. While the proffered arguments suggesting that chapter 176 be construed to include some minimum thresholds or *de minimis* exceptions might be reasonable, we are constrained by the language of the statute as enacted. We must follow the directive of the Supreme Court of Texas that

> [c]ourts must take statutes as they find them. . . . They should search
> out carefully the intendment of a statute, giving full effect to all its
> terms. But they must find its intent in its language and not elsewhere

The Honorable Beverly Woolley - Page 19      (GA-0446)
The Honorable John Smithee
Shirley J. Neeley, Ed.D.

> .... They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*RepublicBank Dallas*, 691 S.W.2d at 607.

## S U M M A R Y

As used in chapter 176 of the Local Government Code, the threshold phrase "contracts or seeks to contract for the sale or purchase of property, goods, or services with a local governmental entity" encompasses one who agrees to, makes, or arranges for, or inquires for, asks for or requests from a local governmental entity a promise creating legal obligations concerning the sale or purchase of property, real or personal, and any goods and services.

A "business relationship" is a connection between two or more parties based on a commercial activity of one of the parties. An "affiliation" is an association between persons or between a person and an organization outside of a "business relationship." Whether an affiliation exists is a fact question. Pursuant to the term "business relationship" and "affiliation," a personal or business interest bearing savings account or loan which generated taxable income to either the person subject to chapter 176 or the local government officer would fall within the scope of chapter 176.

Chapter 176 includes professional services contracts.

Documents filed with the local governmental entity should be retained in accordance with the local governmental entity's records retention schedule. A local governmental entity should create a retention policy for documents maintained on the entity's website.

Partnerships, corporations and other corporate bodies are "persons" subject to chapter 176. As applied to a corporate or legal entity, chapter 176.002's disclosure requirements apply to only the legal entity that is the "person" contracting or seeking to contract with the local governmental entity. Third-party individuals who act as agents under agency law for a legal entity contracting or seeking to contract with the local governmental entity are independently subject to chapter 176 under section 176.002(a)(2).

To the extent a vendor merely adopts the list of the various entities and relationships provided by the local governmental entity, the vendor does not "describe" the required relationships and affiliations and therefore does not comply with chapter 176. Similarly, to the extent a vendor adopts an incomplete list of the various entities and relationships provided by the local governmental entity, the vendor does not "identify" and "describe" all relevant relationships and affiliations and therefore does not comply with chapter 176.

A local governmental entity does not have an affirmative duty to require vendors to comply with chapter 176. Nor does a local governmental entity have an affirmative responsibility to enforce chapter 176, or even to notify vendors of its requirements. A contract between a local governmental entity and a vendor who fails

to comply with chapter 176 is not void. However, local governmental entities may choose to impose such a requirement on all its vendors and to provide for the voidability of a contract entered into in violation of chapter 176.

A vendor must file a conflict of interest questionnaire even if the vendor has no business relationships or affiliations to disclose. Local governmental entities must post such a questionnaire on its website.

Vendors with existing contracts with local governmental entities are not required to file a conflict of interest questionnaire.

Chapter 176 does not apply to open-enrollment charter schools or regional education service centers.

Chapter 176's disclosure requirements apply even when the vendor is a family member of a local government officer.

The reporting requirements of chapter 176 are triggered upon receipt of more than $250 in gifts by the local government officer and the officer's family as individuals rather than as a family unit.

A vendor who provides goods or services at a reduced price to a local governmental entity is subject to chapter 176 by its plain terms and must comply with its disclosure requirements. A related local government officer must also comply with chapter 176's disclosure requirements if disclosure is required by section 176.003.

Whether the identity of a vendor who is also a client of an attorney who is a local government officer may be withheld from disclosure under chapter 176 pursuant to an exception to the attorney-client privilege is a fact question and inappropriate for the opinion process.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee