**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00067-CV**

_____

**FRESH COAT, INC., Appellant**

**V.**

**PAREXLAHABRA, INC., Appellee**

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 07-09-09911 CV

**OPINION**

In this appeal, we consider whether the trial court properly granted a summary judgment in favor of a manufacturer on a statutory indemnity claim brought against it by a company that installed an allegedly defective product, an exterior insulation and finishing system (EIFS), on the exterior walls of various homes in Montgomery County, Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.002 (West 2011) (providing that a manufacturer has a duty to indemnify sellers against losses arising out of "a products liability action"). Because there was no

1

evidence before the trial court to support at least one essential element of the installer's claim for statutory indemnity, we hold the trial court properly granted the manufacturer's motion for summary judgment.

Background

Parexlahabra, Inc. (Parex) is one of several manufacturers of EIFS against whom Fresh Coat, Inc. filed suit seeking indemnity under Chapter 82 of the Texas Civil Practice and Remedies Code. For the purposes of Chapter 82, the Texas Supreme Court has held that EIFS is a product that may be made the basis of a claim for statutory indemnity, that the contractor who installed EIFS is considered a seller, and the manufacturer's indemnity obligation extends to settlements that a contractor paid to settle lawsuits which resulted following the installer's application of EIFS to a home. *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 895, 897-900 (Tex. 2010). The question before us concerns whether an EIFS manufacturer has a statutory duty of indemnity to the seller if the seller fails to show that its damages were related to lawsuits that alleged EIFS is defective and that it caused either property damages or personal injuries.

Between 1995 and 2001, Life Forms, Inc., a production home builder, employed Fresh Coat to install EIFS on the exterior walls of homes that were subsequently sold in Montgomery County, Texas. In 2009, Fresh Coat added Parex to a suit that it had previously filed against other manufacturers of EIFS.

2

According to Fresh Coat's First Amended Petition, its live pleading for the purpose of the summary judgment hearing, it sought indemnity against the defendants who manufactured EIFS relating to forty-nine Montgomery County homeowners who had "brought claims or filed suit" against Fresh Coat "for damages caused to their homes resulting from defective EIFS cladding."

In 2012, challenging Fresh Coat to present evidence to support its claim that Fresh Coat had settled a "products liability action" within the meaning of Chapter 82 of the Civil Practice and Remedies Code, and asserting that Fresh Coat had no evidence that Parex sold the EIFS on the homes at issue, Parex filed a combined no-evidence and traditional motion for summary judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.002; Tex. R. Civ. P. 166a(b) (traditional summary judgment rule), 166a(i) (no-evidence rule). In its no-evidence motion, Parex sought summary judgment on all of Fresh Coat's claims. Parex's no-evidence motion concludes that without evidence to show that it had settled a "products liability action" or to show that Parex's products were installed on the homes at issue, Fresh Coat could not prevail on its claim for statutory indemnity.

In its traditional motion, Parex sought summary judgment on Fresh Coat's indemnity claims that related to the settlements Fresh Coat made with two of the homeowners identified in Fresh Coat's First Amended Petition. In this appeal, Fresh Coat does not challenge the trial court's decision to grant Parex's traditional

motion for summary judgment to the extent its indemnity claim is related to the claims of those two homeowners.

In opposing Parex's no-evidence motion, Fresh Coat filed a response that contained (1) letters containing general complaints about the presence or performance of EIFS on their homes from seven of the homeowners identified in Fresh Coat's First Amended Petition; (2) release agreements[1] between Life Forms and five of the homeowners to show that Life Forms had settled with several homeowners regarding its installation of EIFS; (3) inventory material sheets for various Fresh Coat installation sites, identifying Parex as a supplier of EIFS at those sites; and (4) an affidavit signed by Gerald Banks, Fresh Coat's former president, who stated that Parex-supplied EIFS was used on several of the homes made the basis of Fresh Coat's indemnity claim. Banks's affidavit mentions that Fresh Coat settled claims from homeowners regarding complaints about EIFS on their homes, and his affidavit states that "[i]n many cases, the homeowners' claims

---

[1]The releases attached to Fresh Coat's response reflect that these same homeowners agreed to release all of their claims against Life Forms and Fresh Coat arising from the use of EIFS on their homes. The releases recite that the homeowners were releasing all of their claims, including claims that sound in "contract, tort, negligence, gross negligence, product liability, breach of express or implied warranty, breach of fiduciary duty, fraud, misrepresentation, claims under any federal or state statute, equity, the common law, or any other theory of law or equity[.]" However, the releases do not reflect that Life Forms was sued before the claims were settled; instead, the releases state that "such actions have been taken to avoid the expense and inconvenience of litigation."

4

were resolved without the need for suit to be filed." Banks's affidavit also states that "[i]n other cases, suit was filed and the claims eventually resolved through various release agreements."[2]

After conducting a hearing, the trial court granted Parex's no-evidence and traditional motions for summary judgment. Subsequently, to make the summary judgment final, the trial court severed the summary judgment order from Fresh Coat's remaining claims against the other defendants. *See* Tex. R. Civ. P. 41 (allowing a trial court to sever claims); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693-94 (Tex. 2007) (explaining when a claim may properly be severed).

## Standard of Review

Only the trial court's decision to grant Parex's no-evidence motion is at issue in this appeal. The standards that apply when a trial court decides a no-evidence motion are settled. The trial court should grant a no-evidence motion if:

> (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements.

---

[2]In a footnote in its brief, Fresh Coat alleges that "four of the homes at issue were the subject of litigation prior to settlement[,]" and it identifies the owners of those homes; however, Fresh Coat has not pointed to the evidence that it provided to the trial court showing that it settled with these homeowners after it was sued.

*Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *see also* Tex. R. Civ. P. 166a(i).

The standards used to review a trial court's decision granting a no-evidence motion are also clear. To defeat a no-evidence motion, the non-movant must produce enough summary judgment evidence to raise a genuine issue of material fact on each of the elements of recovery that the movant's no-evidence motion has challenged. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). The non-movant can raise a genuine issue of material fact by producing "more than a scintilla of evidence" to establish that a fact issue exists on each of the elements the no-evidence motion places at issue. *Id.* More than a scintilla of evidence exists when the evidence is such that reasonable and fair-minded people can differ in their conclusions. *Id.* at 601. If "'the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.'" *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

## Analysis

To resolve whether the trial court properly granted Parex's no-evidence motion, we first consider Fresh Coat's argument that it produced more than a scintilla of evidence to show that it was seeking to be indemnified for a "products liability action." *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.002. In its appeal,

6

Parex argues that an "action" is a lawsuit, and that Fresh Coat produced no evidence that it was sued by homeowners who had EIFS applied to their homes. In response, Fresh Coat contends that a seller does not have to show that it was sued to invoke the manufacturer's statutory duty of indemnity under Chapter 82.

Resolving Fresh Coat's issue requires that we determine whether or not the Legislature used the term "action" as the equivalent of the term "suit." Under the Products Liability Act of 1993, a manufacturer is required to indemnify a seller for losses "arising out of a products liability action." *See id.* § 82.002(a). Section 82.001 of the Products Liability Act of 1993 defines "products liability action" as follows:

> "Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

*Id.* § 82.001(2) (West 2011). Parex's no-evidence motion challenged Fresh Coat to demonstrate the damages for which it was seeking indemnity resulted from lawsuits filed against it by homeowners that asserted they had been damaged because a defective product supplied by Parex had been applied to their homes. The trial court appears to have agreed with Parex's no-evidence motion that Fresh Coat's evidence failed to show that its damages related to settlements or expenses

7

incurred because homeowners sued it alleging that Parex supplied a defective product to Fresh Coat that it installed, which then caused damages to the homes at issue.

First, we address whether Fresh Coat provided the trial court with any evidence that its damages arose from a product liability action. Questions that arise from a trial court's interpretation of a statute are reviewed as questions of law, using a de novo standard of review. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). When the meaning of a word in a statute is unambiguous, courts ordinarily give the word its common meaning. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999).

Also, in construing Chapter 82, the Products Liability Act, the Legislature instructed the courts to generally follow the rules of construction found in the Code Construction Act, Chapter 311 of the Government Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 1.002 (West 2002); Tex. Gov't Code Ann. §§ 311.001-.034 (West 2013). Under the Code Construction Act, the words of a statute that are not expressly defined are to be examined in context and in accord with "the rules of grammar and common usage." Tex. Gov't Code Ann. § 311.011(a). "We look first to the statute's language to determine that intent, as we consider it 'a fair assumption that the Legislature tries to say what it means, and therefore the words

8

it chooses should be the surest guide to legislative intent.'" *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008) (quoting *Fitzgerald*, 996 S.W.2d at 866). "If the statute's language is unambiguous, its plain meaning will prevail." *Id*. Further, we are not to enlarge the plain meaning of a statute by enlarging on a word's common meaning. *See Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co*., 235 S.W.3d 695, 701 (Tex. 2007) ("[W]e do not expand the meaning of statutes by implication[.]"); *see also Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002) ("When construing a statute, we ascertain the Legislature's intent from the plain meaning of the actual language used."); *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994) ("In applying the plain and common meaning of the language in a statute, courts may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning; such implication is inappropriate when legislative intent may be gathered from a reasonable interpretation of the statute as it is written.").

While the term "products liability action" is expressly defined in the Products Liability Act of 1993, the phrase "any action" and the term "action" are not. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001-.008 (West 2011). According to Fresh Coat, the letters attached to its no-evidence response are some evidence showing that its claim for indemnity relates to a "products liability action." Parex disagrees; it claims that the letters from the homeowners, which contain general complaints about EIFS, cannot be used to define what actions the

homeowners might have chosen to pursue had they filed suit. Parex reasons that by confining the manufacturer's statutory indemnity obligation to a "products liability action," the Legislature intended to limit claims for statutory indemnification under the Products Liability Act to causes of action that were defined by pleadings.

In light of the absence of an express definition for the term "action" in the Products Liability Act, we use its common meaning to construe it. *See* Tex. Gov't Code Ann. § 311.011(a). Dictionaries inform us of a term's common use and meaning. *See generally Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005); *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc*., 145 S.W.3d 170, 196 (Tex. 2004). According to the version of Black's Law Dictionary available when the Legislature used the term "action" in the statute at issue, the term "action" "means a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law." BLACK'S LAW DICTIONARY 28 (6th ed. 1990). Bryan Garner provides a similar definition in A Dictionary of Modern Legal Usage, defining "action" as "a mode of proceeding in court to enforce a private right, to redress or prevent a private wrong, or to punish a public offense. . . . The terms *action* and *suit* are interchangeable." Bryan A. Garner, A DICTIONARY OF MODERN LEGAL USAGE 20 (2d Ed. 1995). "Action," as defined in Webster's Dictionary, means:

**1:** a deliberative or authorized proceeding: **a** (1) **:** a legal proceeding by which one demands or enforces one's right in a court of justice (2) **:** a judicial proceeding for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense — usu. distinguished from *special proceeding* (3) **:** the right to bring or maintain such a legal or judicial proceeding — see [suit.]

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 21 (2002).

Based on these references, we conclude that as commonly used, "action" is generally used to refer to a legal proceeding. Courts, considering the meaning of the term "action" in other statutes, have construed "action" to mean a "suit." *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995) (stating that the word "action" under section 101.106 of the Texas Civil Practice and Remedies Code "is generally synonymous with 'suit,' which is a demand of one's rights in court"); *Villasan v. O'Rourke*, 166 S.W.3d 752, 763-64 (Tex. App.—Beaumont 2005, pet. denied) (concluding that the term "action," as used in the context of the savings provision enabling section 101.106 of the Civil Practice and Remedies Code, meant suit); *Bradley v. Etessam*, 703 S.W.2d 237, 241 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (stating that "action" in section 10.01 [of article 4590i] means "suit").

In construing what the Legislature intended by a term in a statute, we may also consider laws on the same or similar subjects. *See* Tex. Gov't Code Ann. § 311.023(4). We note that in the same legislative session that the Legislature

11

created the statutory duty of manufacturers to indemnify sellers for damages related to "products liability actions," the Legislature also created a products liability statute of repose, and that it shared section 82.001's definition of "products liability action." *Compare* Act of Feb. 24, 1993, 73rd Leg., R.S., ch. 5, § 1, sec. 82.001-.002, 1993 Tex. Gen. Laws 13, 13 (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001-.002 (West 2011)) (manufacturer's duty to indemnify sellers), *with* Act of Feb. 24, 1993, 73rd Leg., R.S., ch. 5, § 2, sec. 16.012, 1993 Tex. Gen. Laws 13, 14 (former version at Tex. Civ. Prac. & Rem. Code Ann. § 16.012 (West 2002)), (current version at Tex. Civ. Prac. & Rem. Code Ann. § 16.012(2) (West Supp. 2013)) (revising definition of "products liability action" with respect to the statute of repose). The products liability statute of repose provides a manufacturer a defense against suits that are filed more than fifteen years after the date the manufacturing equipment is sold. To avoid the statute's operation, the "claimant must commence a products liability action against a manufacturer or seller of manufacturing equipment" within fifteen years of the equipment's sale. Act of Feb. 24, 1993, 73rd Leg., R.S., ch. 5, § 2, sec. 16.012(b), 1993 Tex. Gen. Laws 13, 15.

Thus, for purposes of repose, the Legislature clearly considered the filing of suit as the "action" that was required to avoid a potential defense of repose. The

12

filing of a lawsuit, and not a letter from a user complaining of a manufacturer's product, is the action required to prevent the operation of the statute of repose.

Additionally, courts can decide what claims were made underlying an indemnity claim when the claims are stated in pleadings; it is more difficult to do so when the claims consist merely of complaints in letters that may or may not have been pursued in a lawsuit. Evaluating whether the seller's damages arose from a "product liability action" with respect to a settlement is further complicated by the fact that under Chapter 82, a manufacturer does not have a statutory indemnity obligation to indemnify a seller from damages resulting from the seller's negligence, intentional misconduct, or its alterations of the product. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.002. Consequently, the nature of the claims the homeowners might have made against Fresh Coat is a critical beginning point for a court to determine whether a seller has a claim for statutory indemnity. To allow letters from homeowners to define actions would require courts to engage in speculation about whether any individual homeowner with complaints over Fresh Coat's installation of EIFS would have asserted actions seeking a products liability recovery or whether those homeowners might have claimed that their damages were solely Fresh Coat's fault. In this case, of the letters in Fresh Coat's summary judgment proof, only two of the letters express complaints that relate to a claimed product defect; the remaining letters attribute the problems with EIFS to Life

13

Forms, the homebuilder, or to Fresh Coat, the EIFS installer, without stating whether the problems being alleged are based on an alleged product defect or some other claim. We will not speculate on what these homeowners might have claimed in pleadings to define their causes of action.

We also conclude that the releases attached to Fresh Coat's response are also no evidence proving that Fresh Coat settled a "products liability action." Although the releases include a release of claims that each homeowner might have asserted based on a products or a strict liability theory, the releases include a laundry list of other claims that fall outside the manufacturer's statutory indemnity obligation. Moreover, Fresh Coat's releases do not state that the claims being released resulted from products liability claims that were filed against Fresh Coat in lawsuits, as they state the parties entered into the settlements to avoid litigating the claims. The releases also do not mention the existence of any lawsuits. Consequently, they provide no evidence that Fresh Coat's indemnity claim arose from the settlement of a product liability action.

Fresh Coat's remaining summary judgment proof, the product inventory sheets and Banks's affidavit, also constitute no evidence that Fresh Coat's indemnity claim arose from a "products liability action." The product inventory sheets, while providing some evidence that Parex supplied EIFS on some of the

14

homes at issue, do not define the legal theories for any causes of action, nor do they indicate that any of the homeowners filed suit.

Banks's affidavit is also not competent summary judgment proof to prove that Fresh Coat incurred any damages arising from a "product liability action." The affidavit does not show that Banks had personal knowledge regarding what types of claims were contained in the lawsuits generally referenced in his affidavit. Affidavits must be based on personal knowledge and are conclusory if the affiant fails to provide underlying facts that support the affiant's conclusions. *See* Tex. R. Civ. P. 166a(f) (requiring affidavits that oppose summary judgment motions to "show affirmatively that the affiant is competent to testify to the matters stated therein"); *LeBlanc v. Lamar State College*, 232 S.W.3d 294, 301 (Tex. App.—Beaumont 2007, no pet.) (citing *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 27 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). Banks's affidavit reflects that Fresh Coat began receiving complaints about EIFS from homeowners in April 2001, but his affidavit fails to state when the lawsuits referenced by his affidavit were filed, whether he was employed by Fresh Coat when the suits were filed, or that he was familiar with the allegations in the lawsuits that his affidavit generally references. We conclude that Banks's affidavit fails to raise a fact issue showing that Fresh Coat's damages arose from a products liability action filed by homeowners. *See Ryland Group, Inc. v. Hood*,

15

924 S.W.2d 120, 122 (Tex. 1996) ("Conclusory affidavits are not enough to raise fact issues.").

To avoid summary judgment, Fresh Coat was required to produce some evidence showing that it suffered a loss by virtue of a "products liability action." Fresh Coat presented the trial court with no evidence to show that its losses arose "out of a products liability action," an element of its statutory indemnity cause of action under section 82.002 of the Civil Practice and Remedies Code. *See id.* § 82.002(a).

We hold the trial court properly granted Parex's no-evidence motion for summary judgment.

## Conclusion

Because Fresh Coat presented no evidence to show that it settled "products liability actions" under Chapter 82 of the Civil Practice and Remedies Code, we hold the trial court properly granted Parex's no-evidence motion. As this conclusion serves as a sufficient basis to support the trial court's judgment, we need not reach Fresh Coat's additional arguments to resolve its appeal. *See* Tex. R. App. P. 47.1. The trial court's judgment is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on November 7, 2013
Opinion Delivered February 20, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.